**PLAINTIFF THE UNITED STATES' MOTION TO ENTER CONSENT DECREE AS AMENDED BY THE ACCOMPANYING STIPULATION**

**(Civil Action No. 2:12-cv-03489-MSG)**

**Exhibit 2**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,
COMMONWEALTH OF VIRGINIA, and
STATE OF MARYLAND,

Plaintiffs,

vs.

TOLL BROTHERS, INC., *ET AL.*

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

12      3489

A TRUE COPY CERTIFIED FROM THE RECORD

DATED: JUN 2 0 2012

ATTEST: Steve Torres

DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CONSENT DECREE

TABLE OF CONTENTS

I.      DEFINITIONS..................................................................................................1

        1.      Definitions.........................................................................................1

II.     JURISDICTION AND VENUE ....................................................................11

III.    APPLICABILITY ..........................................................................................11

        4.      Parties Bound .................................................................................11

        5.      Responsibility for Acts of Others ...................................................11

IV.     BUILDER'S COMPLIANCE PROGRAM ....................................................12

        7.      Compliance .....................................................................................12

        8.      Designation of Storm Water Compliance Representatives............................12

        9.      Notice to EPA of Lists of Projects, Sites, and Distressed Assets ..................16

        10.     Permits ............................................................................................19

        11.     Storm Water Plans and Records .....................................................19

        12.     Pre-Construction Inspection and Review........................................20

        13.     Inspections ......................................................................................22

        14.     Maintenance....................................................................................24

        15.     Site Storm Water Compliance Review and Oversight....................24

        16.     Division-Wide Compliance Summary Report ................................31

        17.     National Compliance Summary Report...........................................31

        18.     Storm Water Training Program .......................................................32

        19.     Storm Water Orientation Program...................................................35

        20.     Contractor and Storm Water Consultant Compliance ....................36

        21.     Corporate Acquisition and Distressed Assets.................................37

i

22.    Submission of Records ...................................................................38

V.    CIVIL PENALTY.................................................................................39

VI.    REPORTING REQUIREMENTS .......................................................41

VII.    STIPULATED PENALTIES ................................................................41

30.    Stipulated Penalty Amounts for Reported Violations....................41

31.    Stipulated Penalty Amounts for Non-Self-Reported Violations...................45

32.    Payment of Stipulated Penalties.....................................................48

VIII.    FORCE MAJEURE ..............................................................................52

IX.    DISPUTE RESOLUTION ....................................................................54

45.    Dispute Resolution..........................................................................54

46.    Judicial Resolution..........................................................................55

X.    INFORMATION COLLECTION AND RETENTION ...........................56

XI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS................57

56.    Federal Plaintiff ..............................................................................57

57.    State Plaintiffs.................................................................................58

58.    Plaintiffs' Reservation of Rights.....................................................58

59.    Builder's Reservation of Rights......................................................59

60.    Not a Permit Modification ...............................................................59

61.    Third Parties....................................................................................59

62.    No Admission ..................................................................................59

XII.    COSTS .................................................................................................60

XIII.    NOTICES.............................................................................................60

XIV.    EFFECTIVE DATE...............................................................................62

XV.    RETENTION OF JURISDICTION ..............................................................................62

XVI.   MODIFICATION ......................................................................................................63

XVII.  TERMINATION ........................................................................................................64

XVIII. PUBLIC PARTICIPATION ......................................................................................67

XIX.   SIGNATORIES/SERVICE........................................................................................67

XX.    INTEGRATION ........................................................................................................67

XXI.   APPENDICES ...........................................................................................................68

XXII.  FINAL JUDGMENT .................................................................................................70

Whereas, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed the Complaint in this matter alleging that Toll Brothers, Inc. and certain of its wholly-owned subsidiaries (collectively "Defendants") have violated the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387, and the regulations promulgated pursuant to that statute, including the conditions and limitations of the Federal General Permit and/or other Applicable Permits, the Maryland General Permit for Stormwater Associated with Construction Activity, and the Virginia General Permit for Discharges of Stormwater from Construction Activities.

Whereas, the Commonwealth of Virginia and the State of Maryland are co-Plaintiffs and have joined in the filing of the Complaint in this matter alleging that Defendants have violated state clean water laws, including the following, respectively: the Maryland Water Pollution Control Act and the Virginia Stormwater Management Act; and the regulations promulgated pursuant to those statutes including, respectively, the terms and conditions of the Maryland General Permit for Stormwater Associated with Construction Activity and the Virginia General Permit for Discharges of Stormwater from Construction Activities.

Whereas, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section II, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    DEFINITIONS

1.    <u>Definitions</u>.  Except as specifically provided in this Consent Decree the terms

used in this Decree shall be defined in accordance with definitions in the Clean Water Act and the regulations promulgated pursuant to the Clean Water Act.  Whenever the terms listed below are used in this Decree, the following definitions apply:

a.  Action Item – a condition that requires action to be taken to achieve or maintain compliance with Storm Water Requirements.

b.  Applicable Permit – whichever of the following permits is applicable to a particular Site:  (i) the Federal General Permit for Storm Water Discharges from Construction Activities; or (ii) in the case of an Authorized State, the Authorized State's National Pollutant Discharge Elimination System ("NPDES") construction general permit; or (iii) an individual NPDES permit issued by EPA or an Authorized State for storm water discharges associated with construction.  This term applies to that permit in its current form or as it may be amended in the future.

c.  Authorized State – a state with an NPDES Program that has been authorized by EPA under Section 402(b) of the CWA, 33 U.S.C. § 1342(b), and 40 C.F.R. Part 123 to issue individual or general NPDES permits including those for storm water discharges associated with construction activity.

d.  Best Management Practices ("BMPs") – the definition in 40 C.F.R. § 122.2, in its current form or as it may be amended in the future.  That definition currently is "schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the pollution of 'waters of the United States.' BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage."

2

e.  Builder – Toll Brothers, Inc., a Delaware corporation with its principal office located in Horsham, Pennsylvania, and its wholly-owned subsidiaries (collectively "Toll") that own or operate Projects or Sites.  For purposes of this definition, "wholly-owned subsidiaries" shall mean those entities where Toll Brothers, Inc., or any of its other wholly-owned subsidiaries, owns substantially all of the outstanding voting securities in the entity.  For the purposes of this definition, "substantially all" shall mean more than ninety-five percent (95%) of the outstanding voting securities.  Builder does not include any subsidiary that does not engage in any residential construction.

f.  Business Day – any day other than a Saturday, Sunday, or State or Federal legal holiday.  If a stated time period in the Decree expires on a Saturday, Sunday, or State or Federal legal holiday, it shall be extended to include the next Business Day.

g.  Clean Water Act ("CWA") – the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251-1387.

h.  Complaint – shall mean the complaint filed by the United States, the Commonwealth of Virginia, and the State of Maryland in this action.

i.  Consent Decree or Decree – shall mean this Decree and all Appendices attached hereto (listed in Section XXI).

j.  Contractor – any contractor (other than a Storm Water Consultant, a utility company or its contractor, or a contractor hired at the behest of a governmental entity or a utility company) that has a contract with Builder to perform work on a Site.

k.  Contractor Representative – a person with the authority and responsibilities described in Paragraph 20.c. (Contractor and Storm Water Consultant Compliance).

3

l.	Date of Entry – the date the Court-approved Decree is entered in the civil docket under Federal Rule of Civil Procedure 79(a).

m.	Designee – a Builder employee who is Storm Water Trained, pursuant to Paragraph 18 (Storm Water Training Program), or a "Storm Water Consultant" as that term is defined in Paragraph 1.yy.

n.	Distressed Assets – all interests in real property resulting from the purchase, acquisition and/or management of any of the following:

(i)	non-performing or sub-performing loans or loan portfolios;

(ii)	lender-owned real property;

(iii)	community development district and other improvement district bonds;

(iv)	tax lien certificates;

(v)	real property acquired from foreclosure sales (whether judicial or non-judicial), receiver's sales, judicial sales, bankruptcy sales, short sales or otherwise neglected or abandoned by the prior owners; or

(vi)	other real property, judgments, or rights constituting or that constituted security for a debt obligation;

provided that such interests arose from circumstances involving: (A) a default on a loan or a default on another financial accommodation or arrangement; or (B) a seller who was insolvent or experiencing liquidity-related financial duress (as a result, for example, of not having sufficient capital to meet the current operating needs of a real property).

o.	Division – Builder's mid-level management unit (the management level between national management and Site-level management) that manages multiple Sites

4

and Projects.  Builder may modify its divisional structure to meet its business needs.

p.      Division Storm Water Compliance Representative – a Builder employee designated pursuant to Paragraph 8 (Designation of Storm Water Compliance Representatives) to oversee storm water compliance activities for a Division (or for a comparable business unit if Builder or Division renames or reorganizes its internal structure).

q.      Division-Wide Compliance Summary Report – a report in the form attached at Appendix G and as required by Paragraph 16 (Division-Wide Compliance Summary Report).

r.      Electronic Signature – an electronic verification in which a person (1) accesses Builder's internal network via a secure log-in and a password that is unique to that person and that has not been divulged to any other individual and (2) indicates that he or she adopts the contents of such record and any certification therein.

s.      EPA – the United States Environmental Protection Agency.

t.      Federal Plaintiff – the United States of America, acting on behalf of EPA.

u.      Federal General Permit – the federal "NPDES General Permit for Storm Water Discharges from Construction Activities" issued by EPA, effective on July 1, 2003 (68 Fed. Reg. 39087) and, successively, June 30, 2008 (73 Fed. Reg. 40338) and February 16, 2012 (77 Fed. Reg. 12286) as modified and amended, and any subsequent amendments or modifications thereto or other permits subsequently issued by EPA to implement the requirements of 40 C.F.R. Parts 122, 123 and 124 for storm water discharges from construction activities.

v.      Government Inspection – a state or federal inspection conducted to

evaluate compliance with Storm Water Requirements.  This term also includes local inspections conducted by a local government entity to enforce an Applicable Permit if that entity has been delegated inspection or enforcement authorities for that permit.

w.      Lists of Projects, Sites, and Distressed Assets – the lists of Projects, Sites, and Distressed Assets as required by Paragraph 9 (Notice to EPA of Lists of Projects, Sites, and Distressed Assets).

x.      Listed Contractor – any Contractor in a category identified in Appendix L.

y.      National Compliance Summary Report – a report in the form attached at Appendix H and as required by Paragraph 17 (National Compliance Summary Report).

z.      National Reporting Period – the time periods covered by the National Compliance Summary Report shown on the table set out in Paragraph 17 (National Compliance Summary Report).

aa.     National Storm Water Compliance Representative – a Builder employee designated pursuant to Paragraph 8 (Designation of Storm Water Compliance Representatives).

bb.     Notice of Intent ("NOI") – a request for coverage under an Applicable Permit.

cc.     Notice of Termination ("NOT") – notification that coverage under an Applicable Permit is ready for termination.

dd.     Paragraph – shall mean a portion of this Decree identified by an Arabic numeral.

ee.     Parties – the Federal Plaintiff, the State Plaintiffs, and Builder.

ff.     Pre-Construction Inspection and Review – the inspection and review

6

required by Paragraph 12 (Pre-Construction Inspection and Review).

gg.     Pre-Construction Inspection and Review Form ("PCIR Form") – the form attached at Appendix C and as required by Paragraph 12 (Pre-Construction Inspection and Review).

hh.     Project – any area where Builder engages in construction activity that includes residences, or other construction associated with those residences, and where coverage under an Applicable Permit is not required.  Non-contiguous areas that are not part of a common plan of development are not considered part of a Project.

ii.     Quarter – one of the following three-month periods (which are used for establishing the Quarterly Reporting Period): (1) November, December and January; (2) February, March and April; (3) May, June and July; and (4) August, September and October.

jj.     Quarterly Compliance Inspection – an inspection of a Site as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight).

kk.     Quarterly Compliance Inspection Form – the form attached at Appendix F and as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight).

ll.     Quarterly Compliance Review – a compliance review of a Site as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight).

mm.   Quarterly Compliance Review Form – the form attached at Appendix F and as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight).

nn.     Quarterly Reporting Period (or "QRP") – the first Quarterly Reporting Period shall be from the Date of Entry until the end of the first full Quarter following the Date of Entry.  Thereafter, the Quarterly Reporting Period shall be each successive

Quarter. The last day of the last Quarterly Reporting Period will be three (3) years after the Date of Entry, even if this results in a Quarterly Reporting Period that is less than three (3) full calendar months.

oo. Record – any record, report, document, or photograph required to be created or maintained pursuant to Storm Water Requirements.

pp. Responsive Action – an action taken or that is necessary to be taken to achieve or maintain compliance with Storm Water Requirements.

qq. Responsive Action Log – a form attached in Appendix D that is used to record Action Items identified during a Site Inspection and the date of Responsive Actions.

rr. Section – shall mean a portion of this Decree identified by a Roman numeral.

ss. Site – any area where Builder engages in construction activity that includes residences, or other construction associated with those residences, and where coverage under an Applicable Permit is required. Builder may treat non-contiguous areas that are part of a common plan of development as a single Site.

tt. Site Inspection – an inspection of a Site, as required by Paragraph 13 (Inspections).

uu. Site Inspection Report – a form attached at Appendix D and as required by Paragraph 13 (Inspections).

vv. Site Storm Water Compliance Representative – a Builder employee designated pursuant to Paragraph 8 (Designation of Storm Water Compliance Representatives) to oversee storm water compliance activities at a Site.

8

ww.    State Plaintiffs – the State of Maryland and the Commonwealth of Virginia.

xx.    Storm Water Compliance Representatives – Site Storm Water Compliance Representatives, Division Storm Water Compliance Representatives and the National Storm Water Compliance Representative.

yy.    Storm Water Consultant – a person or company who provides professional or expert assistance to Builder in complying with Storm Water Requirements.  Each person who is a Storm Water Consultant shall:  (i) possess the skills to assess conditions at a Site that could impact the quality of storm water and non-storm water discharges and compliance with Storm Water Requirements; and (ii) be knowledgeable in the principles and practices of sediment and erosion control and other BMPs.  The term "Storm Water Consultant" does not include, for example, Contractors hired exclusively to install, maintain, or repair BMPs.  Such Contractors are not Designees.

zz.    Storm Water Consultant Representative – a person with the authority and responsibilities described in Paragraph 20.c. (Contractor and Storm Water Consultant Compliance).

aaa.    Storm Water Orientation Program – this term includes all of the orientation requirements set forth in Paragraphs 19 and 20 (Storm Water Orientation Program and Contractor and Storm Water Consultant Compliance).

bbb.    Storm Water Plan ("SWP") – a plan for controlling pollutants in storm water and non-storm water discharges that meets Storm Water Requirements.

ccc.    Storm Water Requirements – the terms and conditions of this Decree and the Applicable Permit for the particular Site, and the laws and regulations that apply,

9

interpret, or enforce the Applicable Permit, in their current form or as any of the foregoing requirements may be amended in the future.

ddd.    Storm Water Trained – an individual who: (i) is certified under the Storm Water Training Program pursuant to Paragraph 18.a.(ii) and (iii) (Storm Water Training Program); (ii) is certified by Envirocert International, Inc. under the Certified Professional in Erosion and Sediment Control ("CPESC") program, the Certified Professional in Storm Water Quality ("CPSWQ") program, or the Certified Erosion, Sediment and Storm Water Inspector ("CESSWI") program, and maintains a current CPESC, CPSWQ, or CESSWI certification, and receives the Builder-specific orientation described in Paragraph 19 (Storm Water Orientation Program); (iii) is certified under the Certified Inspector of Sediment and Erosion Control ("CISEC") program, maintains a current CISEC certification, and receives the Builder-specific orientation described in Paragraph 19; or (iv) is certified under another training program agreed to by the Federal Plaintiff after a request made to the EPA representatives listed in Section XIII (Notices).

eee.    Storm Water Training Program – this term includes all of the training required by Paragraph 18 (Storm Water Training Program).

fff.    United States – shall mean the United States of America, acting on behalf of EPA.

ggg.    Weekly Division Log – the form attached at Appendix E and as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight).

hhh.    Weekly National Log – the form attached to Appendix E and as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight).

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), and over the Parties.  For purposes of this Decree, or any action to enforce this Decree, Builder consents to the Court's jurisdiction over Builder, this Decree, and any action to enforce this Decree.  Builder also consents to venue in this judicial district for this action and any action to enforce this Decree.

3.    In accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the United States has notified the States of Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Maryland, Michigan, Minnesota, New Jersey, New York, North Carolina, Nevada, Ohio, Rhode Island, South Carolina, Texas, Washington, and West Virginia, and the Commonwealths of Massachusetts, Pennsylvania, and Virginia of the commencement of this action.

## III.    APPLICABILITY

4.    Parties Bound.  The obligations of this Decree apply to and are binding upon the United States and the State Plaintiffs, and upon Builder and any successor or assign to all or substantially all of its business (but only to the extent of the Projects and Sites acquired).  This Decree shall not be binding on any purchaser of real property who is not an entity otherwise covered by this Decree.

5.    Responsibility for Acts of Others.  Builder shall be responsible for complying with Storm Water Requirements at Builder's Sites.  In any action to enforce this Decree, Builder shall not assert as a defense the failure by any officer, director, trustee, servant, successor, assign, employee, agent, Contractor, sub-contractor or Storm Water Consultant to comply with

11

Paragraphs 8 through 22 of this Decree.

6.      Builder shall not alter its general corporate structure or enter into agreements with third parties for the primary purpose of directly or indirectly circumventing the requirements of this Consent Decree.

IV.      BUILDER'S COMPLIANCE PROGRAM

7.      <u>Compliance</u>.  Builder shall comply with all applicable Storm Water Requirements at Builder's Sites and shall not violate the prohibition in Section 301(a) of the CWA by discharging pollutants in storm water without an Applicable Permit, or by making prohibited non-storm water discharges, to waters of the United States at any of Builder's Sites or Projects.

8.      <u>Designation of Storm Water Compliance Representatives</u>.

a.      Builder shall designate at least one Site Storm Water Compliance Representative for each Site prior to signing the Pre-Construction Inspection and Review Form for that Site or within sixty (60) days of the Date of Entry, whichever is later.  If Builder designates more than one Site Storm Water Compliance Representative at a Site, Builder shall designate a primary and a secondary Site Storm Water Compliance Representative.  The primary Site Storm Water Compliance Representative shall be responsible for overseeing storm water compliance and implementing the requirements of this Decree at the assigned Site.  When a primary Site Storm Water Compliance Representative is unavailable, the secondary Site Storm Water Compliance Representative will automatically assume the same duties and responsibilities assigned to the primary Site Storm Water Compliance Representative.  Each Site Storm Water Compliance Representative shall:

(i)      be a Builder employee;

12

(ii)    be Storm Water Trained within the timeframes specified in Paragraphs 18.a(ii) and (iii);

(iii)    be authorized by Builder and have the responsibility to supervise all work necessary to meet Storm Water Requirements at the Site, including work performed by Contractors, sub-contractors and Storm Water Consultants;

(iv)    be authorized by Builder and have the responsibility to order employees, Contractors, sub-contractors and Storm Water Consultants to take appropriate Responsive Action to comply with Storm Water Requirements, including requiring any such person to cease or correct a violation of Storm Water Requirements, and to order or recommend such other actions or sanctions as necessary to meet Storm Water Requirements;

(v)    be familiar with and have the authority and responsibility to update the Site's SWP;

(vi)    be the point of contact at the Site for regulatory officials, Builder employees, Contractors, sub-contractors and Storm Water Consultants regarding Storm Water Requirements; and

(vii)    report to the Division Storm Water Compliance Representative regarding compliance with Storm Water Requirements.

b.    Builder shall designate one Division Storm Water Compliance Representative for each Site prior to signing the Pre-Construction Inspection and Review Form for that Site or within thirty (30) days of the Date of Entry, whichever is later. Builder may designate the same Division Storm Water Compliance Representative for more than one Site or Division or designate multiple such Representatives for a single

13

Division.  The Division Storm Water Compliance Representative shall:

(i)    be a Builder employee;

(ii)    be Storm Water Trained within the timeframes specified in Paragraphs 18.a(ii) and (iii);

(iii)    be authorized by Builder and have the responsibility to supervise all work necessary to meet Storm Water Requirements in the Division including work performed by Contractors, sub-contractors and Storm Water Consultants;

(iv)    be authorized by Builder to order employees, Contractors, sub-contractors and Storm Water Consultants to take appropriate Responsive Action to comply with Storm Water Requirements, including requiring any such person to cease or correct a violation of Storm Water Requirements, and to order or recommend such other actions or sanctions as necessary to meet Storm Water Requirements;

(v)    be familiar with and have the authority to certify and amend SWPs; and

(vi)    prepare the Weekly Division Logs.

c.    Builder shall designate one National Storm Water Compliance Representative not later than seven (7) days after the Date of Entry of this Decree.  The National Storm Water Compliance Representative shall:

(i)    be a Builder employee;

(ii)    be Storm Water Trained not later than thirty (30) days after the Date of Entry;

(iii)    oversee the development and maintenance of the lists of Projects,

14

Sites, and Distressed Assets established pursuant to Paragraph 9 (Notice to EPA of Lists of Projects, Sites, and Distressed Assets);

(iv)    submit the National Compliance Summary Report to the Federal Plaintiff, and submit to each of the State Plaintiffs the National Compliance Summary Report or the portion of the report that is relevant to the respective State Plaintiffs pursuant to Paragraph 17 (National Compliance Summary Report);

(v)    serve as Builder's point of contact for State and Federal Plaintiffs for Builder-wide compliance matters related to Storm Water Requirements; and

(vi)    review and sign the Weekly National Logs.

d.    If a Storm Water Compliance Representative must be replaced and Builder replaces him or her within thirty (30) days of the vacancy, the gap in designation shall not be deemed a violation of Paragraphs 8.a, 8.b, 8.c or 8.g. of this Decree.  However, the gap in designation shall not excuse non-compliance with any other Storm Water Requirement.  During the gap a Storm Water Trained Builder employee shall fulfill the signature requirements of Paragraphs 13.b, 15.b, 15.d, 15.e, 15.f and 16.

e.    Except as expressly provided in the Decree, Storm Water Compliance Representatives may delegate the performance of storm water compliance duties required under this Decree to Designees.  Any such delegation does not relieve Builder of responsibility for the proper performance of any delegated task or for compliance with Storm Water Requirements.

(i)    Designees shall have sufficient authority to perform the delegated tasks; and

(ii)    The Quarterly Compliance Inspection shall not be conducted by

15

the same person who conducted a Site Inspection under Paragraph 13

(Inspections) (other than a Quarterly Compliance Inspection under Paragraph 15

that also serves as a Site Inspection under Paragraph 13) at the Site during that

Quarterly Compliance Inspection period.

f.       Storm Water Compliance Representatives may also hire Contractors to

install, maintain or repair BMPs.  Such Contractors need not be Designees to perform

such tasks.  Any such use of Contractors does not relieve Builder of responsibility for the

proper performance of any delegated task or for compliance with Storm Water

Requirements.

g.       Builder shall post the name and contact information for all Site Storm

Water Compliance Representatives for a Site at a conspicuous location at that Site, such

as at the construction office, or at an entrance or exit if the Site does not have a

construction office.

9.       Notice to EPA of Lists of Projects, Sites, and Distressed Assets.

a.       Not later than sixty (60) days after the Date of Entry, Builder shall provide

a list of Projects and Sites ("the List") to the EPA representatives listed in Section XIII

(Notices) in searchable electronic form or in hardcopy, in the format attached as

Appendix A as described below.

(i)       The initial List shall include all Sites and Projects where Builder

has initiated construction activity and final stabilization has not occurred as of the

Date of Entry.

(ii)       The List shall provide: (A) the state and county in which the Site is

located; and (B) the Site name.

16

(iii)    Builder shall also provide on the List the following additional information for each Site:  (A) the address and latitude and longitude (if the street address is not available, then a nearby street intersection must be provided in addition to the state and county); (B) the date that the Pre-Construction Inspection and Review Form was signed, for Sites where Builder commenced construction activity after the Date of Entry; (C) the estimated number of acres that will be disturbed at the Site; (D) the name of the permit holder; and (E) when applicable, the date the NOT was signed.  This additional information about each Site shall be provided either by adding the information to the List or by providing it by a hyperlink in the List to documents that contain the information (e.g., NOI, PCIR Form, NOT).

(iv)    For each of Builder's Projects, the List shall include the Project's name and address.

(v)    Builder shall also include on the List the number of Sites owned or operated by any entity in which Builder has an interest other than a wholly-owned interest.

b.    Builder shall provide to the EPA representatives listed in Section XIII (Notices) an updated List on or before the 30th day after the end of each Quarterly Reporting Period.  The updated List shall include the information provided in Paragraph 9.a for each Site and Project, including new Sites and Projects.  New Sites or Projects are those where commencement of construction activity occurred during the prior Quarterly Reporting Period.  For previously listed Sites, Builder is required to update only the permittee name and the date the NOT was signed, and this information shall be provided

17

by either adding the information to the List or by providing it by a hyperlink in the List to documents that contain the information (e.g., NOI, PCIR Form, NOT).  Builder may remove Sites from the updated List after the date permit coverage was terminated under the Applicable Permit, but only after the date of permit coverage termination has appeared on at least one quarterly updated version of the List.

c.      Not later than sixty (60) days after the Date of Entry, Builder shall also provide a list of Projects and Sites subject to Paragraph 21.b (Projects and Sites Acquired through Distressed Assets) to the EPA representatives listed in Section XIII (Notices) in searchable electronic format or in hardcopy, in the format identified in Appendix A ("Distressed Assets List").  The Distressed Assets List shall include: (i) the Project or Site name, (ii) address location (street address, city, state, and zip code), (iii) the date on which Gibraltar (as defined in Paragraph 21.b) acquired title to such Project or Site, (iv) how Gibraltar initially acquired interest in the Distressed Asset (*i.e.*, purchase, acquisition, or management), (v) an explanation of why the asset was considered a "Distressed Asset" (as defined in Paragraph 1.n), and (vi) the status of each Project and Site.  Builder shall provide an updated Distressed Assets List to the EPA representatives listed in Section XIII (Notices) on or before the 30th day after the end of each Quarterly Reporting Period.  Builder may remove Projects and Sites from the Distressed Assets List after expiration of the 180-day grace period provided in Paragraph 21.b, after the date permit coverage was terminated under the Applicable Permit, or after such Project or Site has been transferred to the list of Projects and Sites required by Paragraph 9.b.  The reason for removal shall be provided in the Status column of the Distressed Assets List before any Project or Site can be removed from that List.

d.    For purposes of this Paragraph 9, construction activity does not include geotechnical investigations, surveying, environmental testing, plant (vegetation) salvage, or the initial installation of storm water controls that are not sediment basins, provided that none of these activities involves significant soil disturbance.

10.    Permits.  Solely for the purposes of compliance with this Decree, at a Site where coverage under an Applicable Permit is or will be required, Builder shall obtain permit coverage at that Site prior to signing the Pre-Construction Inspection and Review Form, or within the time required by the Applicable Permit, whichever is earlier.  This provision is not an admission by either Party as to the requirements for obtaining an Applicable Permit under the Clean Water Act.

11.    Storm Water Plans and Records.

a.    For each Site, Builder shall prepare a site-specific SWP prior to signing the Pre-Construction Inspection and Review Form, or within the time required by the Applicable Permit, whichever is earlier.  This Paragraph 11 only applies to Sites at which the Pre-Construction Inspection and Review Form is signed after the Date of Entry.

b.    Builder shall provide a copy of the National SWP Criteria, attached as Appendix B, to the persons who prepare each of its SWPs.  The development of all SWPs after the Date of Entry shall be guided by the National SWP Criteria.

c.    All SWPs and SWP amendments shall comply with the terms and conditions of the Applicable Permit and this Decree.  Each SWP shall:

(i)    be site specific;

(ii)    identify the BMPs that will be used for each anticipated major phase of construction;

19

(iii)   incorporate the inspection frequency and routine maintenance deadlines under the Applicable Permit; and

(iv)   include clear, concise descriptions of site-specific BMPs to implement the requirements of the Applicable Permit and to guide those responsible for overseeing implementation of the SWP at each stage of construction.

d.   Each SWP shall contain a statement by the preparer that its development was guided by the requirements of Paragraph 11.c and the National SWP Criteria attached hereto as Appendix B, and the Applicable Permit.

e.   SWPs shall be revised or amended in accordance with the Applicable Permit.

f.   All SWPs and SWP amendments shall be certified as required by the Applicable Permit.

g.   All Site Storm Water Compliance Representatives shall review the SWP, and such review shall not be delegated.

h.   The SWP and any Records required to be maintained at individual Sites by the Applicable Permit or Paragraphs 12 (Pre-Construction Inspection and Review), 13 (Inspections), and 14 (Maintenance) shall be maintained at the relevant Site construction office if the Site has one.  If there is no construction office, the location of the SWP and these Records shall be posted along with, or adjacent to, the contact information of the Site Storm Water Compliance Representative(s) required by Paragraph 8.g.

12.   Pre-Construction Inspection and Review.

a.   For Sites where Builder commences construction activity more than thirty

20

(30) days after the Date of Entry, a Storm Water Compliance Representative (who must be Storm Water Trained within the timeframes specified in Paragraphs 18.a(ii) and (iii)) shall perform a Pre-Construction Inspection and Review prior to Builder's commencement of construction activity at that Site.  Only one (1) Pre-Construction Inspection and Review needs to be performed for each Site, including all areas that are a part of a common plan of development.

b.　　　For purposes of this Paragraph 12, the commencement of construction activity does not include geotechnical investigations, surveying, environmental testing, plant (vegetation) salvage, or the initial installation of BMPs that are not sediment basins, provided none of these activities involve significant soil disturbance.

c.　　　The Pre-Construction Inspection and Review shall include an inspection of the entire Site and completion of the Pre-Construction Inspection and Review Form attached at Appendix C.  The Pre-Construction Inspection and Review form may be completed in an electronic format.  Prior to the commencement of Builder's construction activity, a Responsive Action shall be completed for each Action Item on the Pre-Construction Inspection and Review Form, identified during the Pre-Construction Inspection and Review.

d.　　　A Storm Water Compliance Representative (who must be Storm Water Trained within the timeframes specified in Paragraphs 18.a(ii) and (iii)) shall review and sign the Pre-Construction Inspection and Review Form, a task that may not be delegated. The Pre-Construction Inspection and Review Form shall be located as provided by Paragraph 11.h.

e.　　　Where any entity other than Builder commenced construction activity at a

21

Site and Builder takes title to all or a portion of that Site after the Date of Entry, Builder shall determine no later than ten (10) Business Days after taking title, or after a longer period of time if agreed to in writing by the Builder and Federal Plaintiff in light of the size of the acquisition, whether that portion of that Site has unstabilized soils.  If so, Builder shall, as soon as practicable, install and maintain appropriate erosion and sediment control BMPs or assume responsibility for maintaining any existing appropriate erosion and sediment control BMPs for those portions of the Site with unstabilized soils. When requesting a longer period of time in which to perform a soil stabilization determination, Builder shall, within ten (10) Business Days after taking title to such Site, provide the following information in its request to the EPA Region 3 contact provided in Section XIII (Notices): name of Site; location of Site (*i.e.* address and latitude and longitude; if the street address is not available, then a nearby street intersection must be provided in addition to the state and county); reason why Builder is seeking an extension; Builder's schedule for completion of the stabilization determination and implementation of any necessary BMPs at the Site; and identification of the person(s) currently responsible for performing or overseeing the stabilization determination and implementing any necessary BMPs at the Site.  Federal Plaintiff maintains its discretionary authority to approve or deny such a request.  Federal Plaintiff shall not unreasonably withhold its approval of an extension.  If a Site subject to this subparagraph has an existing storm water plan, then Builder need not comply with Paragraphs 11.a. through 11.d (Storm Water Plans and Records) or acknowledge Statement 2 on Appendix C (Pre-Construction Inspection and Review Form) at such Site.

     13.    <u>Inspections</u>.

22

a.      At a minimum, the Site Storm Water Compliance Representative shall inspect each Site at the frequency required by the Applicable Permit.  The Site Inspection requirements for each Site shall go into effect on the date the Pre-Construction Inspection and Review Form is signed, or on the date required by the Applicable Permit, whichever is earlier.

b.      Commencing thirty (30) days after the Date of Entry, the Site Storm Water Compliance Representative (who must be Storm Water Trained not later than sixty (60) days after the Date of Entry) shall record Site Inspections on the Site Inspection Report form attached as Appendix D.  The Site Inspection Report form may be completed in an electronic format.  If a Designee conducts an inspection, the Site Storm Water Compliance Representative shall review and sign the completed Site Inspection Report, a task that may not be delegated.  Not more than twice a Quarter per Site, a Division Storm Water Compliance Representative or the National Storm Water Compliance Representative may review and sign completed Site Inspection Reports if neither the primary nor secondary Site Storm Water Compliance Representative is available; provided, however, that the Site Storm Water Compliance Representative shall review the Responsive Action Log for any such Site Inspection Report.  The Site Inspection Report shall be certified in accordance with the terms of the Applicable Permit.

c.      The final Site Inspection Report generated prior to the submittal of a NOT shall be clearly labeled as such.

d.      The Site Inspection Reports shall be kept with the SWP.

e.      A copy of all Site Inspection Reports created each week shall be submitted in paper or electronic format to the Site's Division Storm Water Compliance

23

Representative by the close of business each Monday of the following week.

14.     Maintenance.

a.      Builder shall maintain each Site in accordance with Storm Water Requirements.

b.      For every Action Item on the Site Inspection Report that is identified during a Site Inspection required by Paragraph 13 (Inspections) or on the Quarterly Compliance Inspection Form that is identified during a Quarterly Compliance Inspection as required by Paragraph 15 (Site Storm Water Compliance Review and Oversight), the Site Storm Water Compliance Representative or a Contractor whose work is supervised by the Site Storm Water Compliance Representative shall record the information required on the applicable forms (Appendices D and F) or in another single, identifiable document or database.  The information required includes: a specific reference to the Action Item including the date of the inspection, a brief description of the Responsive Action taken, and the date the Responsive Action was completed.  The Site Storm Water Compliance Representative need not (but may) record Responsive Actions completed during the inspection when the Action Item was discovered.  The Responsive Action Log, Site Inspection Report, or the single identifiable document or database referenced above shall be kept on Site as per Paragraph 11.h.

15.     Site Storm Water Compliance Review and Oversight.

a.      Builder shall provide for Site oversight and review by performing weekly management reviews of outstanding Action Items for each Site and by performing Quarterly Compliance Inspections and Reviews, the procedures for which are set forth in the subparagraphs below.

24

b.    Weekly Division Logs.  Each week, the Division Storm Water Compliance Representative shall prepare a Weekly Division Log using the form attached in Appendix E for the week ending the previous Friday.  The Weekly Division Log shall list all Site Inspection Reports submitted the week prior and shall list:

(i)    all Action Items identified in the preceding Site Inspection Reports and Responsive Action Logs that were not corrected within seven (7) days;

(ii)    all Sites that received a written inspection report from a governmental agency evaluating compliance with the Applicable Permit;

(iii)    all Sites with excess sediment or other pollutants exiting the Site;

(iv)    all Sites with excessive sediment on off-Site roads; and

(v)    all Sites for which a required Site Inspection Report was not submitted.

If the Weekly Division Log is prepared by a Designee, the Division Storm Water Compliance Representative must review the Weekly Division Log each week, a task that may not be delegated.  The Division Storm Water Compliance Representative shall work with the Site Storm Water Compliance Representative to ensure that Action Items identified on the Weekly Division Logs are being corrected.  In each Weekly Division Log, the Division Storm Water Compliance Representative shall confirm (a task that may not be delegated) that he or she has discussed the Action Items listed in Paragraph 15.b(i)-(v), as well as the proposed corrections to these Action Items, with the Site Storm Water Compliance Representative(s).  The Division Storm Water Compliance

25

Representative must send a copy of each completed Weekly Division Log to the National Storm Water Compliance Representative by the close of business each Friday.

c. Weekly National Logs. Builder will generate a Weekly National Log containing the items listed in Paragraph 15.b(i)-(v), except that Action Items in Paragraph 15.b(i) will be included only if these have not been corrected within fourteen (14) days. The National Storm Water Compliance Representative shall review and sign each Weekly National Log. After reviewing the Weekly National Log, the National Storm Water Compliance Representative, or a Land Development Vice President or a Regional President if the National Storm Water Compliance Representative is unavailable (due to, *e.g.*, vacation or illness), shall follow up with the Site and/or Division Storm Water Compliance Representatives to ensure that all items listed in Paragraph 15.b(i), (iii), (iv), and (v) that are reported on the Weekly National Log are corrected and will document those communications in the Weekly National Log.

d. Quarterly Compliance Inspection. Within thirty (30) days after the end of each Quarterly Reporting Period, the Division Storm Water Compliance Representatives shall conduct Quarterly Compliance Inspections at Builder's Sites according to the following schedules:

(i) During the first four Quarterly Reporting Periods following the Date of Entry, the Division Storm Water Compliance Representatives shall perform Quarterly Compliance Inspections according to the following schedule:

| Within 30 days after the end of the First Quarterly Reporting Period | 50% of Builder's Sites, as selected by the National Storm Water Compliance Representative, that had commenced construction as of the last day of the First Quarterly Reporting Period |
|---|---|

26

| Within 30 days after the end of the Second Quarterly Reporting Period | The remainder of Builder's Sites not inspected following the end of the First Quarterly Reporting Period and that were still subject to coverage under an Applicable Permit through the end of the Second Quarterly Reporting Period, plus any Site that commenced construction during the Second Quarterly Reporting Period |
|---|---|
| Within 30 days after the end of the Third Quarterly Reporting Period | Those Sites that had been inspected following the end of the First Quarterly Reporting Period and that were still subject to coverage under an Applicable Permit through the end of the Third Quarterly Reporting Period, plus any Site that commenced construction during the Third Quarterly Reporting Period |
| Within 30 days after the end of the Fourth Quarterly Reporting Period | Those Sites that had been inspected following the end of the Second Quarterly Reporting Period and that were still subject to coverage under an Applicable Permit through the end of the Fourth Quarterly Reporting Period, plus any Site that commenced construction during the Fourth Quarterly Reporting Period |

(ii)     During the fifth (5th) through twelfth (12th) Quarterly Reporting Periods following the Date of Entry, the Division Storm Water Compliance Representatives shall perform Quarterly Compliance Inspections at 25% of Builder's Sites each Quarterly Reporting Period.  Such Sites shall be randomly selected, with two exceptions.  The first exception is for Quarterly Compliance Inspections performed following the eighth (8th) and twelfth (12th) Quarterly Reporting Periods: in those periods, Builder will conduct a Quarterly Compliance Inspection of all Sites that were not subject to such an inspection during the prior three (3) such periods.  The second exception is for new Sites: Builder shall ensure that each new Site is inspected by the Division Storm Water Compliance Representative within six (6) months of the start of

27

construction at that Site.  This will result in a total of at least one Quarterly Compliance Inspection at each Site during each of the following two time periods: fifth (5th) through eighth (8th) Quarterly Reporting Periods; and ninth (9th) through twelfth (12th) Quarterly Reporting Periods.

The results of each Quarterly Compliance Inspection shall be recorded on a Quarterly Compliance Inspection Form attached at Appendix F.  The Quarterly Compliance Inspection Form may be completed in an electronic format.  The Quarterly Compliance Inspection shall not be conducted by the same person who conducted a Site Inspection under Paragraph 13 (Inspections) at that Site during the previous Quarterly Reporting Period.

e.    Supplemental Quarterly Compliance Inspections for Sites with persistent problems.  If a Site meets any of the following criteria at the end of a Quarterly Reporting Period, the Division Storm Water Compliance Representative shall conduct a supplemental Quarterly Compliance Inspection of that Site no later than thirty (30) days after the end of that Quarterly Reporting Period:

(i)    excessive sediment or other pollutants exit the Site for four (4) or more consecutive weeks;

(ii)    excessive sediment is found on off-Site roads for four (4) or more consecutive weeks;

(iii)    Action Items during the Quarterly Reporting Period were not addressed within the timeframe required by the Applicable Permit for a cumulative total of thirty (30) days or more for all such items

28

combined.

(iv)     the Site is selected randomly as one of ten percent of all Sites with less than six (6) Action Items during the Quarterly Reporting Period;

(v)     any individual question on a Site Inspection Report identifies two or more Action Items for a total of six (6) nonconsecutive weeks during the Quarterly Reporting Period; or

(vi)     ten (10) or more Action Items were found during a Site Inspection.

The results of the inspection of any Site with persistent problems, as identified above, shall be recorded on a Quarterly Compliance Inspection Form attached at Appendix F. Within seven (7) days of the supplemental Quarterly Compliance Inspection, the Division Storm Water Compliance Representative shall complete a Quarterly Compliance Review Form in accordance with Paragraph 15.f.  A compliance inspection performed under this subparagraph shall not serve as a Quarterly Compliance Inspection for the purposes of Paragraph 15.d.  If a compliance inspection is required under this subparagraph for a Site that is scheduled or selected for inspection under Paragraph 15.d for the same Quarterly Reporting Period, then the supplemental inspection shall be performed during the next Quarterly Reporting Period.  When the supplemental inspection discussed in the preceding sentence is performed, it shall be performed in addition to any Quarterly Compliance Inspection required under Paragraph 15.d and/or this subparagraph for the same Quarterly Reporting Period.

f.     Quarterly Compliance Review.  No later than seven (7) days after each Quarterly Compliance Inspection pursuant to Paragraphs 15.d or 15.e, the Division Storm

Water Compliance Representative shall complete a Quarterly Compliance Review for the Site that was the subject of that Quarterly Compliance Inspection in accordance with the form attached at Appendix F. The Quarterly Compliance Review shall encompass the review and summary of storm water compliance information for the immediately preceding Quarterly Reporting Period. The Quarterly Compliance Review Form may be completed in an electronic format. The Division Storm Water Compliance Representative(s) shall review the Quarterly Compliance Review Form with the Site Storm Water Compliance Representative(s) for that Site, all of whom shall sign the Quarterly Compliance Review Form. No tasks in this subparagraph may be delegated except as provided in Appendix F.

g.      Responsive Action. The Site Storm Water Compliance Representative(s) shall be responsible for managing the completion of a Responsive Action for each Action Item on the form and identified during the Quarterly Compliance Inspection or Quarterly Compliance Review in the same manner as required under Paragraph 14 (Maintenance).

h.      Missed Quarterly Compliance Inspection and/or Review. If Builder fails to perform a Quarterly Compliance Inspection and/or Review for a Site pursuant to the schedule provided in Paragraphs 15.d, 15.e, and 15.f, then Builder must perform a make-up Quarterly Compliance Inspection and/or Review for that Site the following Quarterly Reporting Period in addition to those Sites that are scheduled for inspection and review pursuant to Paragraphs 15.d, 15.e, and 15.f.

i.      National Storm Water Compliance Representative Inspections. Beginning with the third (3rd) Quarterly Reporting Period following the Date of Entry, the National Storm Water Compliance Representative shall inspect fifteen (15) Sites per Quarterly

Reporting Period, a task that may not be delegated. The National Storm Water Compliance Representative shall select those Sites based on the level of construction activity, and shall select Sites to achieve a diversity of geographical regions and phases of construction over the course of a year. For this purpose, the National Storm Water Compliance Representative shall not visit the same Site twice during the same year. During the National Storm Water Compliance Representative Inspections, the National Storm Water Compliance Representative shall evaluate each Site using the Quarterly Compliance Inspection Form required by Paragraph 15.d. The purpose of the National Storm Water Compliance Representative Inspection is to evaluate the accuracy of regular Site Inspections. The results of the National Storm Water Compliance Representative Inspections will be used to develop the training program required by Paragraph 18.a.(v).

16. <u>Division-Wide Compliance Summary Report</u>. Within thirty-seven (37) days of the end of each Quarterly Reporting Period, the Division Storm Water Compliance Representative shall prepare a Division-Wide Compliance Summary Report in accordance with the form attached at Appendix G. The Division-Wide Compliance Summary Report shall be reviewed and signed by the Division Storm Water Compliance Representative, a task that may not be delegated. Copies shall be sent to all Site Storm Water Compliance Representatives within the Division and any other persons identified in Appendix G. If a Division-Wide Compliance Summary Report is missed, then the next Division-Wide Compliance Summary Report must also include the information for the missed report.

17. <u>National Compliance Summary Report</u>. The National Storm Water Compliance Representative shall submit the National Compliance Summary Report to the Federal Plaintiff pursuant to Section XIII (Notices), and submit to each of the State Plaintiffs the National

31

Compliance Summary Report or the portion of the report that is relevant to that State Plaintiff, in accordance with the form attached as Appendix H. The National Storm Water Compliance Representative, or a Builder executive at a higher corporate level, shall certify the report. The tasks in this Paragraph may not be delegated. The National Compliance Summary Report shall be due as set forth in the following Table:

| National Compliance Summary Report | Report Coverage Period ("National Reporting Period") | Report Due Within 60 Days after the Last Day of the Following Period |
|---|---|---|
| 1 | 1st & 2nd Quarterly Reporting Periods | 2nd Quarterly Reporting Period |
| 2 | 3rd & 4th Quarterly Reporting Periods | 4th Quarterly Reporting Period |
| 3 | 5th, 6th, 7th & 8th Quarterly Reporting Periods | 8th Quarterly Reporting Period |
| 4 | 9th, 10th, 11th & 12th Quarterly Reporting Periods | 12th Quarterly Reporting Period |

Copies shall be sent to the persons identified in Appendix H.

18.     Storm Water Training Program.

a.     Builder shall implement the Storm Water Training Program set forth in Appendices I, J and K. The Storm Water Training Program shall include: employee storm water training; Storm Water Compliance Representative training; annual refresher training; and semi-annual training. Training under this program may be live or provided through electronic media.

(i)     Builder shall provide employee storm water training to all Builder employees who, in the field at a Site, primarily and directly supervise (or who primarily and directly assist in the supervision of) construction activity at a Site and who are not covered by subparagraph 18.a.(ii). Builder employees must complete the employee storm water training no later than sixty (60) days after the Date of Entry, or no later than thirty (30) days after beginning work at a Site,

32

whichever is later.  The employee storm water training syllabus is attached at Appendix I.  Employee storm water training that meets the requirements of this Consent Decree may be completed prior to the Date of Entry.  The employee storm water training program may be the same as the Storm Water Compliance Representative training program.

(ii)    Builder shall provide Storm Water Compliance Representative training to all Storm Water Compliance Representatives and any Designee of such representative, who is a Builder employee, pursuant to the syllabus attached as Appendix J.  To be certified as Storm Water Trained under this subparagraph, all Storm Water Compliance Representatives and Designees, who are Builder employees, must complete the Storm Water Compliance Representative training and pass a written, on-line, or computer-based test, which is equivalent to the test attached as Appendix K.  All Site and Division Storm Water Compliance Representatives and Designees, who are Builder employees, shall be certified as Storm Water Trained no later than sixty (60) days after the Date of Entry, or prior to being a designated Storm Water Compliance Representative or Designee at a Site, whichever is later.  Storm Water Compliance Representative training that meets the requirements of this Consent Decree may be completed prior to the Date of Entry.  Employees who have completed Storm Water Compliance Representative training within fifteen (15) months prior to the Date of Entry may be certified in compliance with this subparagraph by passing the test any time after lodging of this Consent Decree and no later than sixty (60) days after the Date of Entry.  A certification under this subparagraph shall be valid for up to

33

fifteen (15) months.

(iii)    Builder shall provide annual refresher training for Storm Water Compliance Representatives and Builder employee Designees who were previously certified under subparagraph 18.a.(ii) and who continue to work as Storm Water Representatives or Designees.  Each such person shall complete the annual refresher training, pursuant to the syllabus attached as Appendix J, and pass a written test which is equivalent to the test attached as Appendix K.  The renewal certification shall be valid for up to fifteen (15) months.

(iv)    Builder shall maintain records of each Storm Water Compliance Representative's and Designee's certification.  Builder shall provide such records to the Federal Plaintiff within thirty (30) days of Federal Plaintiff's request, or within another period of time agreed to by the Builder and Federal Plaintiff in light of the size of the request.

(v)    The National Storm Water Compliance Representative shall develop and present semi-annual training for the Site and Division Storm Water Compliance Representatives beginning in the fifth Quarterly Reporting Period after the Date of Entry, tasks that may not be delegated.  The training under this program may be live or provided through electronic media.  The training shall focus on the performance of Site Inspections and associated recordkeeping.  Each semi-annual training program will incorporate the data and information gained from the inspections performed during the preceding two Quarterly Reporting Periods pursuant to Paragraphs 15.d, 15.e, 15.h and 15.i.  The National Storm Water Compliance Representative will summarize the semi-annual training

34

presentations in the National Compliance Summary Report required pursuant to Paragraph 17 (beginning with the second National Compliance Summary Report), where he or she will also list names of the Sites and locations (*i.e.* county and state) visited pursuant to Paragraph 15.i.

b.      Every instructor presenting Builder's Storm Water Training Program shall be either: (i) a Storm Water Consultant or (ii) a Storm Water Trained Builder employee.

c.      Builder shall evaluate Builder's Storm Water Training Program annually and determine whether any changes to the Storm Water Training Program are necessary. A written evaluation of the Storm Water Training Program and a description of any significant proposed changes for EPA's approval shall be included in the second semi-annual National Compliance Summary Report, and each annual National Compliance Summary Report thereafter.

19.     <u>Storm Water Orientation Program</u>.

a.      Not later than sixty (60) days after the Date of Entry or prior to a Listed Contractor or Storm Water Consultant beginning work for Builder, whichever is later, Builder shall provide either by posting on an internet site or otherwise delivering to each Listed Contractor or Storm Water Consultant: an overview of the Builder's storm water program; information explaining how to contact a Site Storm Water Representative as required by Paragraph 20.c(iv); and a description of the potential consequences for failure to comply with Storm Water Requirements.

b.      Not later than seven (7) days after the Site Pre-Construction Inspection and Review Form is signed or prior to a Listed Contractor or Storm Water Consultant beginning work at a Site, whichever is later, Builder shall provide all Listed Contractors

and Storm Water Consultants at the Site the following information:  Builder's compliance expectations; how to obtain additional storm water compliance information; and the potential consequences of non-compliance.  This information may be provided by posting it in the same location as the information required by Paragraph 8.g. or it may be provided by alternative means of delivery.

20.    Contractor and Storm Water Consultant Compliance.

a.    After the Date of Entry, any written requests for bids from Listed Contractors and Storm Water Consultants for work at a Site shall notify the bidding Listed Contractors and Storm Water Consultants that any successful bidder must comply with the Applicable Permit.

b.    Within sixty (60) days of the Date of Entry or prior to a Listed Contractor or Storm Water Consultant beginning work for Builder, whichever is later, Builder shall provide either by posting on an internet site or otherwise delivering to each Listed Contractor or Storm Water Consultant the applicable "Dos & Don'ts List" included in Appendix M.

c.    Builder's master contracts and purchase orders entered into or modified after the Date of Entry with Listed Contractors and Storm Water Consultants shall:  (i) require compliance with the Applicable Permit and with instructions by Builder's Storm Water Compliance Representatives to comply with Storm Water Requirements;  (ii) require all Listed Contractors to circulate the "Dos and Don'ts List" to their employees and sub-contractors who will be working at a Site; (iii) require designation of a Contractor Representative or Storm Water Consultant Representative, respectively, with the authority to oversee, instruct, and direct their respective employees and sub-

36

contractors at a Site regarding compliance with Storm Water Requirements; (iv) require the Contractor Representative or Storm Water Consultant Representative to contact Builder's Site Storm Water Compliance Representative to obtain any additional storm water compliance information; (v) where the information required by Paragraph 19.a or 20.b is provided through an internet site, identify the internet site and require the Listed Contractor Representative or Storm Water Consultant Representative to review the posted information; and (vi) describe the consequences for failure to comply with the Applicable Permit.

21.    Corporate Acquisition and Projects and Sites Acquired through Distressed Assets.

a.    Corporate Acquisition.  In the event that Builder acquires the business or all or substantially all of the assets of another company by purchase or merger within ninety (90) days before or any time after the Date of Entry, Paragraphs 8-20 of the Consent Decree shall apply to all of the acquired Projects and Sites owned or operated by the acquired company, or by one of its "wholly-owned subsidiaries" (as that term is defined in Paragraph 1.e above, substituting the acquired company for Builder). Builder's obligation to comply with Paragraphs 8-20 of this Consent Decree with respect to Projects and Sites owned or operated by the acquired company or one of its wholly-owned subsidiaries shall begin 180 days from the date of closing the transaction, or after a longer period of time if agreed to in writing by the Builder and Federal Plaintiff in light of the size of the acquisition.  If a Site already has an existing storm water plan, then Builder does not need to comply with Paragraph 11.a through 11.d (Storm Water Plans and Records) or acknowledge Statement 2 on Appendix C (Pre-Construction Inspection and Review Form) at such Site.  If construction activity has commenced (as defined in

37

Paragraph 12) at a Site of the acquired company, then Builder need not comply with the requirements of Paragraph 12 (Pre-Construction Inspection and Review) at that Site. Nothing in this Paragraph shall affect Builder's obligation to comply with Applicable Permits at the newly acquired Sites.

b.      Projects and Sites Acquired through Distressed Assets.  In the event Gibraltar Capital and Asset Management LLC ("Gibraltar"), a wholly-owned subsidiary of Toll Brothers, Inc., or any of Gibraltar's affiliates and subsidiaries, acquires a Project or Site through the acquisition of Distressed Assets within ninety (90) days before or any time after the Date of Entry, Paragraphs 8-20 of the Consent Decree shall apply to such Projects or Sites but not sooner than 180 days from the date Gibraltar acquires title to those Projects or Sites.  Provided, however, that Paragraph 9.c shall apply to such Projects or Sites upon the Date of Entry.  If any Site subject to this subparagraph has an existing storm water plan prior to Gibraltar taking title to such Site, then Gibraltar need not comply with Paragraph 11.a through 11.d (Storm Water Plans and Records) or acknowledge Statement 2 on Appendix C (Pre-Construction Inspection and Review Form) at such Site.  If construction activity has commenced (as defined in Paragraph 12) at a Site subject to this subparagraph prior to Gibraltar taking title to such Site, then Gibraltar need not comply with the requirements of Paragraph 12 (Pre-Construction Inspection and Review) at that Site.  Nothing in this subparagraph shall affect Gibraltar's obligation to comply with Applicable Permits at any Site acquired through the acquisition of a Distressed Asset or any other acquisition.

22.     Submission of Records.

a.      Within thirty (30) days of Federal Plaintiff's request for a Record, or

38

within a longer period of time agreed to in writing by the Builder and Federal Plaintiff in light of the size of the request, Builder shall provide a copy to Federal Plaintiff at the address set forth in the request of any Record required under this Decree.  This Paragraph does not apply to Record requests concerning a specific Site made during or after a Government Inspection of that Site.

b.    The submittal of any Record to EPA under Paragraph 9 (Notice to EPA of Lists of Projects, Sites, and Distressed Assets), Paragraph 17 (National Compliance Summary Report), and in response to a request made pursuant to Paragraph 22.a shall be accompanied by a certification that meets the requirements of 40 C.F.R. § 122.22(b)-(d).

## V.    CIVIL PENALTY

23.    Not later than thirty (30) days after the Date of Entry, Builder shall pay the sum of $741,000.00 as a civil penalty.  Failure to pay the civil penalty shall subject Builder to interest accruing from the first day after the 30-day period has run until the date payment is made, or until the 14th day after the 30-day period has run, whichever occurs first, at the rate specified in 28 U.S.C. § 1961.  Failure to pay the civil penalty for more than fourteen (14) days after the 30-day period has run shall subject Builder to the stipulated penalty set forth in Paragraph 31.l.

24.    Builder shall pay $701,947.00 of the civil penalty by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Builder following lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Pennsylvania, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106, (215) 861-8560.  At the time of payment, Builder shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent

Decree in United States et al. v. Toll Brothers, Inc. et al., and shall reference the civil action number and DOJ Case No. 90-5-1-1-09301, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and to:

U.S. Environmental Protection Agency
Fines and Penalties
Cincinnati Finance Office
PO Box 979077
St. Louis, MO 63197-9000;

and to:

Regional Docket Clerk
U.S. Environmental Protection Agency Region 3 (3RC00)
1650 Arch Street
Philadelphia, PA 19103-2029.

25. Builder shall pay the civil penalty due to each State Plaintiff in the manner described below. Each payment shall be accompanied by a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States et al. v. Toll Brothers, Inc. et al., and shall reference the civil action number and DOJ Case No. 90-5-1-1-09301.

a. Payment of $22,030.00 to the State of Maryland shall be made by check made out to the "Maryland Clean Water Fund" and mailed to:

Maryland Department of the Environment
P.O. Box 2057
Baltimore, MD 21203-2057

b. Payment of $17,023.00 to the Commonwealth of Virginia shall be made by check, money order, or cashier's check made out to the "Treasurer of Virginia" including a notation "for Virginia Stormwater Management Fund/Toll Brothers Consent Decree" and mailed to:

Department of Conservation and Recreation

40

Division of Finance
Accounts Payable
203 Governor Street, Suite 302
Richmond, VA 23219

Builder shall send a copy of the check, money order, or cashier's check and cover letter to the EPA, the Commonwealth of Virginia and the State of Maryland in accordance with Section XIII (Notices).

26.     Builder shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

VI.     <u>REPORTING REQUIREMENTS</u>

27.     All National Compliance Summary Reports shall be submitted to the Federal Plaintiff as designated in Section XIII of this Consent Decree (Notices).  A response to a request under Paragraph 22 (Submission of Records) shall be submitted to the federal official making the request.

28.     Reports and other forms required by this Consent Decree may be signed by Electronic Signature.

29.     The reporting requirements of this Consent Decree do not relieve Builder of any reporting obligations required by the Clean Water Act or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

VII.     <u>STIPULATED PENALTIES</u>

30.     <u>Stipulated Penalty Amounts for Reported Violations</u>.  Builder shall submit National Compliance Summary Reports as required by Paragraph 17 (National Compliance Summary Report) to the Federal Plaintiff that will identify violations listed in this Paragraph. State Plaintiffs or Federal Plaintiff may also use other information gathered by State or Federal

41

Plaintiffs to identify violations for which stipulated penalties may be assessed by the Federal

Plaintiff under this Paragraph 30.  Except for subparagraph 30.a, stipulated penalties under this

Paragraph will not apply to violations that occur prior to the end of the first Quarterly Reporting

Period.  Stipulated penalties shall also not apply under Paragraphs 30.d or 30.f for the Quarterly

Compliance Inspection or Review Forms or the Division-Wide Compliance Summary Reports

that cover the first Quarterly Reporting Period.  Federal Plaintiff may demand stipulated

penalties pursuant to this Paragraph within one (1) year after the violation is reported to the

Federal Plaintiff, or within six (6) months after termination of this Consent Decree pursuant to

Section XVII (Termination), whichever is earlier.  For each of the instances listed below, upon

written demand of Federal Plaintiff, Builder shall pay stipulated penalties in the following

amounts:

   a.      Discharge(s) of pollutants from a Site to a water of the United States prior

to obtaining coverage as required under an Applicable Permit:  $2,500 per day of such

discharge(s).

   b.      Failure to perform (including completion of all Responsive Actions) or, if

performed, a material failure to document a Pre-Construction Inspection and Review as

required by Paragraph 12 (Pre-Construction Inspection and Review):  $2,500 per Site.

   c.      Failure to perform or, if performed, a material failure to document a Site

Inspection as required by Paragraph 13 (Inspections):

| Percentage of Inspections Missed/Undocumented Per National Reporting Period | Stipulated Penalty Per Period | | | |
| --- | --- | --- | --- | --- |
| | 2nd QRP | 3rd–4th QRP | 5th–8th QRP | 9th–12th QRP |
| 0.01 to 5% | 0 | 0 | 0 | 0 |
| 5.01 to 8% | $1,000 | $2,500 | $10,000 | $15,000 |

42

| | | | | |
|---|---|---|---|---|
| 8.01 to 12% | $3,000 | $6,750 | $25,000 | $30,000 |
| 12.01 to 20% | $6,000 | $12,500 | $50,000 | $100,000 |
| 20.01 to 25% | $10,000 | $25,000 | $100,000 | $200,000 |
| >25% | $30,000 | $62,500 | $250,000 | $500,000 |

d.     Failure to perform or, if performed, a material failure to document a

Quarterly Compliance Inspection or Review as required by Paragraph 15.d, 15.e, or 15.f

(Site Storm Water Compliance Review and Oversight):

| Percentage of Quarterly Inspections or Reviews Undocumented Per National Reporting Period | Stipulated Penalty |
|---|---|
| For each undocumented inspection or review from 0.01 to 5% of required inspections or reviews: | $200 |
| For each additional undocumented inspection or review from 5.01 to 10% of required inspections or reviews: | $400 |
| For each additional undocumented inspection or review > 10% of required inspections or reviews: | $600 |

If a Quarterly Compliance Inspection or Review is missed, then the make-up Quarterly

Compliance Inspection or Review must be performed during the Quarter immediately

following the date the missed Quarterly Compliance Inspection or Review should have

taken place.

e.     Upon missing a Quarterly Compliance Inspection and/or Review,

Builder's failure to perform or, if performed, a material failure to document a make-up

Quarterly Compliance Inspection and/or Review, as required by Paragraph 15.h (Site

43

Storm Water Compliance Review and Oversight), shall result in a stipulated penalty of $2,000.

f.      Material failure to prepare a Division-Wide Compliance Summary Report as required by Paragraph 16 (Division-Wide Compliance Summary Report):

| Days | Stipulated Penalty |
|---|---|
| 1st through 7th day | $250 per Report |
| 8th through 30th day | $500 per Report |
| 31st through 90th day | $5,000 per Report |

If a Division-Wide Compliance Summary Report is missed, then the next Division-Wide Compliance Summary Report must also include the information for the missed report.

g.      Material failure to prepare a complete Weekly Division Log as required by Paragraph 15.b (Site Storm Water Compliance Review and Oversight) shall result in a stipulated penalty of $750 for each incomplete Weekly Division Log.  If a Weekly Division Log is missed, then the next Weekly Division Log must also include the information for the missed Weekly Division Log.

h.      Material failure to prepare a complete Weekly National Log as required by Paragraph 15.c (Site Storm Water Compliance Review and Oversight) shall result in a stipulated penalty of $500 for each incomplete Weekly National Log.  If a Weekly National Log is missed, then the next Weekly National Log must also include the information for the missed Weekly National Log.

i.      Failure to have trained and certified Site Storm Water Compliance Representatives as required by Paragraph 18.a(ii) and (iii) at the time of an inspection

44

required by Paragraph 15 (Site Storm Water Compliance Review and Oversight): $100 per person.

j.      Failure of any Site Storm Water Compliance Representative or Division Storm Water Compliance Representative to complete the semi-annual training course as required by Paragraph 18.a(v): $100 per person. Pursuant to 18.a(v), the semi-annual training is required to be completed during the 5th, 7th, 9th and 11th Quarterly Reporting Periods.

31.     <u>Stipulated Penalty Amounts for Non-Self-Reported Violations</u>. Builder shall not be obligated to report the following violations to Federal Plaintiff. Except for subparagraph 31.l, stipulated penalties under this Paragraph will not apply until three (3) months after the Date of Entry. Federal Plaintiff may demand stipulated penalties pursuant to this Paragraph within one (1) year after the date the violation is discovered by Federal Plaintiff, or within six (6) months after the termination of this Consent Decree pursuant to Section XVII (Termination), whichever is earlier. For each of the instances listed below, upon written demand of Federal Plaintiff, Builder shall pay stipulated penalties in the following amounts:

a.      Material failure to submit the initial Lists of Projects, Sites, and Distressed Assets or updated Lists of Projects, Sites and Distressed Assets as required by Paragraph 9 (Notice to EPA of Lists of Projects, Sites, and Distressed Assets): $500 per day.

b.      Failure to designate Storm Water Compliance Representatives:

(i)      Failure to designate Site Storm Water Compliance Representatives as required by Paragraph 8 (Designation of Storm Water Compliance Representatives): $500 per person.

(ii)    Failure to designate Division Storm Water Compliance

Representative(s) as required by Paragraph 8 (Designation of Storm Water

Compliance Representatives):  $250 per Site.

(iii)    Failure to designate a National Storm Water Compliance

Representative as required by Paragraph 8 (Designation of Storm Water

Compliance Representatives):  $1,000 per person.

c.    Failure to train employees as required by Paragraph 18.a(i) or failure to

train and certify Storm Water Compliance Representatives and Builder-employed

Designees as required by Paragraph 18.a(ii) – (iii) (Storm Water Training Program):

$250 per person.

d.    Failure to provide Storm Water Orientation as required by Paragraph 19.a

(Storm Water Orientation Program) shall be subject to the following stipulated penalties:

(i)    if Builder chooses to satisfy the requirements of Paragraph 19.a by

posting such information on an internet site, and fails to timely post such

information:

| Days | Stipulated Penalty |
|------|--------------------|
| 1st through 30th days | $100  per day |
| 31st through 60th days | $250  per day |
| 61st day and beyond | $500  per day; |

or

(ii)    if Builder chooses to satisfy the requirements of Paragraph 19.a by

delivering such information in a manner other than through posting it on the

46

internet, and fails to timely provide such information:  $50 per each affected Listed Contractor or Storm Water Consultant.

e.      Failure to comply with the notification requirements of Paragraph 20.a: $50 per each affected Listed Contractor or Storm Water Consultant.

f.      Failure to provide the information required by Paragraph 20.b shall be subject to the following stipulated penalties:

(i)      if Builder chooses to satisfy these requirements by posting such information on an internet site, but fails to timely post such information:

| Days | Stipulated Penalty |
|---|---|
| 1st through 30th days | $100 per day |
| 31st through 60th days | $250 per day |
| 61st day and beyond | $500 per day; |

or

(ii)      if Builder chooses to satisfy the requirements of Paragraph 20.b by delivering such information in a manner other than through posting it on the internet, and fails to timely provide such information:  $50 per each affected Listed Contractor or Storm Water Consultant.

g.      Failure to include the provisions required by Paragraph 20.c in Builder's master contracts entered into or modified after the Date of Entry with Listed Contractors or Storm Water Consultants:  $50 per each affected Listed Contractor or Storm Water Consultant.

h.      Failure to certify any submittal as required by Paragraph 22.b: $1,000 per violation.

i.      Failure to prepare an initial SWP, or, if prepared, a material failure of the initial SWP to comply with the Applicable Permit or this Decree:  $2,500 per SWP.

j.      At the time of a Government Inspection, failure to be in compliance with Paragraph 8.g or 11.h:  $500 per Government Inspection.

k.      Failure to submit a National Compliance Summary Report as required by Paragraph 17 (National Compliance Summary Report):

| Days | Stipulated Penalty |
|---|---|
| 1st through 14th days | $250 per day |
| 15th through 30th days | $500 per day |
| 31st day and beyond | $1,000 per day |

l.      Failure to pay the civil penalty and any accrued interest required to be paid under Section V (Civil Penalty), Paragraph 23 when due:  $1,000 per day commencing fifteen (15) days after the due date.

32.   Payment of Stipulated Penalties.

a.      Builder shall provide information regarding violations under Paragraph 30 (Stipulated Penalty Amounts for Reported Violations) to the Federal Plaintiff in the National Compliance Summary Report in the form attached as Appendix H.

b.      All penalties owed to the Plaintiffs under Paragraphs 30 and 31 above shall be due and payable within thirty (30) days of Builder's receipt from EPA of a demand for payment of the penalties (on behalf of the Federal and State Plaintiffs), unless Builder invokes the procedures under Section IX (Dispute Resolution).

(i)      All payments of stipulated penalties owed to the Federal Plaintiff shall be made by EFT to the United States Department of Justice lockbox bank

48

referencing DOJ Case No. 90-5-1-1-09301 and the civil action number.  Payment

shall be made in accordance with the instructions provided by the United States

upon entry of the Decree.  Any EFTs received at the United States Department of

Justice lockbox bank after 11:00 a.m. (Eastern Time) will be credited on the next

Business Day.  After payment, Builder shall mail a cover letter specifying the

amount and date of payment, civil action number, DOJ Case No. 90-5-1-1-09301

and a reference to the demand letter, to the Federal Plaintiff in accordance with

Section XIII (Notices).

(ii)    All payments of stipulated penalties owed to a State Plaintiff shall

be made in the manner described below.  Each payment shall be accompanied by

a transmittal letter specifying the amount and date of payment, civil action

number, DOJ Case No. 90-5-1-1-09301 and a reference to the demand letter.

(A)    Payment of stipulated penalties due to the Commonwealth

of Virginia shall be made by check, money order, or cashier's check made

out to Treasurer of Virginia including a notation "for Virginia Stormwater

Management Fund/Toll Brothers Consent Decree" and mailed to:

Department of Conservation and Recreation
Division of Finance
Accounts Payable
203 Governor Street, Suite 302
Richmond, VA 23219

(B)    Payment of stipulated penalties due to the State of

Maryland shall be made by check made out to the Maryland Clean Water

Fund and mailed to:

Maryland Department of the Environment
P.O. Box 2057

49

Baltimore, MD 21203-2057

Builder shall send a copy of the check and cover letter to the EPA representatives, Commonwealth of Virginia, and the State of Maryland in accordance with Section XIII (Notices).

c.      State Plaintiffs shall receive 50% of the stipulated penalties collected for violations of subparagraphs 31.b(i), 31.b(ii), 31.c, 31.i, and 31.j that are attributable to violations occurring in their state and are discovered by Federal or State Plaintiffs.  State Plaintiffs shall receive 50% of the stipulated penalties collected for violations of subparagraph 30.a. that are attributable to violations occurring in their state.  Stipulated penalties reported by Builder pursuant to Paragraph 30 (with the exception of subparagraph 30.a) shall be paid in full to the Federal Plaintiff.

33.      Stipulated penalties shall accrue as provided in Paragraphs 30 and 31 above.  For stipulated penalties that are assessed "per day," penalties shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of the Consent Decree.  Penalties shall accrue regardless of whether Federal Plaintiff has notified Builder of a violation, but need not be paid until a demand is made.  However, if a penalty would otherwise accrue because the lists of Projects, Sites, and/or Distressed Assets required by Paragraph 9 or the National Compliance Summary Report required by Paragraph 17 are deemed by the Federal Plaintiff to contain a material deficiency, stipulated penalties shall not begin to accrue until the Federal Plaintiff has notified Builder of any such deficiency.

34.     The Federal Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35.     Stipulated penalties shall continue to accrue as provided in Paragraph 33, above, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of the Federal Plaintiff that is not appealed to the Court, Builder shall pay penalties agreed upon or accepted to the Federal Plaintiff within thirty (30) days of the effective date of the agreement or the receipt of Federal Plaintiff's decision or order.

b.     If the dispute is appealed to the Court and the Federal Plaintiff prevails in whole or in part, Builder shall pay all penalties awarded by the Court within sixty (60) days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Builder shall pay all penalties awarded by the Court, together with interest as provided in Paragraph 37 running from the 61st day after the District Court's decision, within fifteen (15) days of receiving the final appellate court decision.

d.     Notwithstanding Paragraph 30, during judicial review by this Court under Section IX (Dispute Resolution) of this Decree, stipulated penalties shall not accrue, during the period, if any, beginning on the 31st day after the Court's receipt of the motion provided for by Paragraph 46 until the date that the Court issues a final decision regarding such dispute.

36.     Builder shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

37.     If Builder fails to pay stipulated penalties according to the terms of this Decree, Builder shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due pursuant to Paragraph 32.b or Paragraph 35.

38.     Except as provided in this Paragraph, the Federal and State Plaintiffs reserve the right to pursue any other remedies for violations of this Consent Decree, the Clean Water Act, or equivalent state law to which they are entitled.  Any such action shall not be considered a "Covered Dispute" under Section IX (Dispute Resolution).  The Federal and State Plaintiffs will not seek stipulated penalties and civil or administrative penalties for the same violation; provided, however, the Federal and State Plaintiffs expressly reserve the right to seek injunctive relief against Builder for violations of this Decree, the Clean Water Act, or equivalent state law even if a stipulated penalty has been collected pursuant to this Decree.

## VIII.    FORCE MAJEURE

39.     A "force majeure event," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Builder, its contractors, or any entity controlled by Builder that prevents or delays the performance of any obligation of this Consent Decree despite all reasonable efforts by Builder to fulfill the obligation.  "All reasonable efforts" includes using all reasonable efforts to anticipate any potential force majeure event (where such event can be anticipated) and using all reasonable efforts to address the effects of any such event: (a) as it is occurring; and (b) after it has occurred, to prevent or minimize any resulting failure to perform or delay in performing any obligation of this Consent Decree.  "Force majeure event" does not include Builder's financial inability to perform any obligation under this Consent Decree.

40.     Builder shall retain all rights granted under the Applicable Permit concerning a

52

force majeure event.

41.     Builder shall provide notice to the EPA representatives listed in Section XIII (Notices) orally or by electronic or facsimile transmission ("initial notice") as soon as practicable, but not later than ten (10) days after the time Builder first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event.  Builder shall also provide written notice ("subsequent written notice"), as provided in Section XIII of this Consent Decree (Notices), within thirty (30) days of the time Builder first knew of, or by the exercise of due diligence, should have known of, the event.  The Federal Plaintiff may, in its unreviewable discretion, extend the time within which initial notice or subsequent written notice must be given.  No such extension shall be effective unless in writing.  The subsequent written notice shall state the anticipated duration of any failure to comply or delay in compliance with any obligation of this Consent Decree; the cause(s) of such failure or delay; Builder's past and proposed actions to prevent or minimize such failure or delay; a schedule for carrying out those actions; and Builder's rationale for attributing any failure to comply or delay in compliance to a force majeure event.  Except as may be provided in Paragraph 40, failure to provide initial notice and subsequent written notice as required by this Paragraph shall preclude Builder from asserting any claim of force majeure.

42.     If the Federal Plaintiff agrees that a force majeure event, as defined by this Section, has occurred, the Federal Plaintiff shall agree to extend the time for Builder to perform the affected requirements for the time necessary to complete those obligations.  An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any unaffected obligation.  Failures resulting from a force majeure event shall not be considered a breach of this Consent Decree, and Builder shall not be liable for any

stipulated penalties occurring as a direct result of the event, provided Builder complies with the terms of this Section.

43.     If the Federal Plaintiff does not agree that a force majeure event, as defined by this Section, has occurred, or does not agree to the length of the extension of time sought by Builder, the Federal Plaintiff's position shall be binding, unless Builder invokes Dispute Resolution under Section IX of this Consent Decree.  In any such dispute, Builder bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event, that Builder gave the notice required by Paragraph 41, that the force majeure event caused any failure to comply or delay in compliance with an obligation of this Consent Decree that Builder claims was attributable to that event, and that Builder exercised all reasonable efforts to prevent or minimize any failure or delay in compliance caused by the event.

IX.     <u>DISPUTE RESOLUTION</u>

44.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve a dispute arising under or with respect to this Consent Decree ("Covered Dispute").  A Covered Dispute shall be considered to have arisen when Builder serves on Federal Plaintiff a written notice of dispute, in accordance with Section XIII of this Consent Decree (Notices).  Such notice of dispute shall state clearly the matter in dispute.

45.     <u>Dispute Resolution</u>.

a.     Any Covered Dispute shall first be the subject of informal negotiations. Informal negotiations shall proceed from the date the notice of dispute is served, as follows, unless these periods are modified by written agreement.

b.     If Builder invokes dispute resolution procedures, within fifteen (15) days

54

of service of written notice of the dispute, Builder shall serve on the Federal Plaintiff a written Statement of Position regarding the Covered Dispute, in accordance with Section XIII of this Consent Decree (Notices). The Statement of Position shall include, but need not be limited to, a concise statement of the Covered Dispute, the Builder's position, and an explanation of that position.

c. The Federal Plaintiff shall serve its Statement of Position within thirty (30) days of receipt of Builder's Statement of Position, in accordance with Section XIII of this Consent Decree (Notices). The Federal Plaintiff's Statement of Position shall include, but need not be limited to, a concise statement of the Covered Dispute, the Federal Plaintiff's position, and an explanation of that position.

d. Upon Builder's receipt of Federal Plaintiff's Statement of Position, Federal Plaintiff and Builder may work towards resolving the Covered Dispute. If no resolution is reached within fifteen (15) days, or such longer period as may be agreed to in writing by the Parties, the Federal Plaintiff's Statement of Position shall be binding on Builder, unless Builder files a motion for judicial resolution of the Covered Dispute within thirty (30) days after the conclusion of informal negotiations in accordance with the following Paragraph.

46. <u>Judicial Resolution</u>. Builder may seek judicial resolution of the Covered Dispute by filing with the Court and serving on the Federal Plaintiff, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the Covered Dispute.

47. The Federal Plaintiff shall respond to Builder's motion within the time period allowed by the Local Rules of this Court. Builder may file a reply memorandum, to the extent permitted by the Local Rules.

48.     Except as otherwise provided in this Consent Decree, Builder shall bear the burden of establishing its position on the Covered Dispute by a preponderance of the evidence under applicable law.

49.     Subject to Paragraph 35.d, the invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Builder under this Consent Decree, unless and until final resolution of the dispute so provides.  Subject to Paragraph 35.d, stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 35.  If Builder does not prevail on the disputed issue, stipulated penalties awarded by the Court shall be paid as provided in Section VII (Stipulated Penalties).

## X.     INFORMATION COLLECTION AND RETENTION

50.     The Federal Plaintiff, State Plaintiffs and their authorized representatives acting on their behalf, upon presentation of credentials and at all reasonable times, shall have the right of entry onto all Sites and Projects and have the right to access Records located at Sites or Projects or at any offsite location where Records pertaining to a Site or Project are located, for the purpose of assessing Builder's compliance with this Consent Decree.

51.     Until one (1) year after the termination of this Consent Decree, Builder shall retain, and shall instruct its Storm Water Consultants to preserve, all Records.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.

52.     At any time during the applicable retention period for a Record and upon request by the Federal Plaintiff, Builder shall provide to Federal Plaintiff a copy of any Record required to be maintained under this Section.  Builder shall provide Records requested by Federal Plaintiff

56

pursuant to this Paragraph consistent with the procedures set forth in Paragraph 22 (Submission of Records).  This Paragraph does not apply to Record requests made during a Government Inspection.

53.     Builder may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Builder asserts a privilege, it must identify the privilege being asserted and describe the nature of the Record not being produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the Federal Plaintiff to assess the applicability of the privilege or protection; provided, however, that no Records required to be created or maintained by this Consent Decree shall be withheld on grounds of privilege.

54.     With respect to any Records provided to Federal Plaintiff, Builder may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Builder seeks to protect as CBI, Builder shall follow the procedures set forth in 40 C.F.R. Part 2.

55.     Nothing in this Consent Decree shall be construed to limit any right of entry or access or other information gathering authority held by Federal or State Plaintiffs pursuant to any federal, state or local law, permit, or regulation, nor shall it be construed to limit any duty or obligation of Builder to maintain documents, records, or other information imposed by applicable federal or state laws, regulations or permits.

## XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

56.     Federal Plaintiff.  In consideration of the payment of the penalty required by Paragraph 24, Federal Plaintiff hereby releases its claims and covenants not to sue or take administrative action against Builder for civil violations or alleged civil violations at the Sites

listed in Appendix N, through the date of lodging of this Decree, of: (i) Section 308 of the Clean Water Act as it relates to Storm Water Requirements; (ii) the prohibition in Section 301(a) of the Clean Water Act against discharging pollutants without an Applicable Permit; or (iii) the conditions, limitations and requirements of an Applicable Permit.  The provisions of this Paragraph shall survive the termination of this Decree.

57.     State Plaintiffs.  In consideration of the payment of the penalty required by Paragraph 25, State Plaintiffs hereby release their claims and covenant not to sue or take administrative action against Builder for civil violations or alleged civil violations at the Sites listed in Appendix N, through the date of lodging, of:  (i) state law equivalent to Section 308 of the Clean Water Act as it relates to Storm Water Requirements; (ii) the prohibition in Section 301(a) of the Clean Water Act against discharging pollutants without an Applicable Permit and any state law equivalent to this prohibition; (iii) the conditions, limitations and requirements of an Applicable Permit; or (iv) any state law, regulation or permit regulating discharges of storm water.  The provisions of this Paragraph shall survive the termination of this Decree.

58.     Plaintiffs' Reservation of Rights.

a.     Each Plaintiff reserves all rights not expressly waived in this Decree.

b.     Each Plaintiff reserves all rights and remedies, legal and equitable, available to enforce the provisions of this Decree.

c.     Each Plaintiff reserves the right to seek and obtain criminal sanctions against any person, including Builder.

d.     Each Plaintiff reserves the right to undertake any action for injunctive relief against any person, including Builder, in response to conditions which may present an imminent and substantial endangerment to the public health or welfare or the

58

environment.

59.     Builder's Reservation of Rights.  Except as expressly stated herein, Builder reserves all defenses and all rights and remedies, legal and equitable, available to it in any action brought by any Plaintiff or by Builder under this Decree, an Applicable Permit, the Clean Water Act, or any other federal or state statutes, regulations or rules.  This Decree shall not be construed as a waiver of any defenses or remedies that Builder may have to any future alleged violations of an Applicable Permit, or of the federal and state laws and regulations governing an Applicable Permit.

60.     Not a Permit Modification.  This Consent Decree is neither a permit, nor a modification of any permit, under any federal, state, or local laws or regulations, and this Decree does not relieve Builder of its responsibilities to comply with all applicable federal, state, and local laws, regulations, and permits.  The Federal and State Plaintiffs do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Builder's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Water Act, 33 U.S.C. §§ 1251-1387, or with any other provisions of federal, state, or local laws, regulations, or permits.

61.     Third Parties.  This Consent Decree does not limit or affect the rights of Builder or of the Federal and State Plaintiffs against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Builder, except as otherwise provided by law.  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party that is not a party to this Consent Decree.

62.     No Admission.  Builder does not admit any liability to the United States or the State Plaintiffs arising out of the transactions or occurrences alleged in the Complaint.

59

## XII.   COSTS

63.   The Parties shall bear their own costs of this action, including attorneys' fees.

## XIII.   NOTICES

64.   Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the Federal Plaintiff:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611, Ben Franklin Station
> Washington, DC  20044-7611
> Re: DOJ Case No. 90-5-1-1-09301
>
> Director, Water Enforcement Division
> c/o Susan Bruce
> Office of Enforcement and Compliance Assurance
> U.S. Environmental Protection Agency
> Mail Code 2243A
> Room 3102
> 1200 Pennsylvania Ave, NW
> Washington, DC  20460-0001
>
> Andrew Dinsmore
> Environmental Scientist, Stormwater Team Leader
> U.S. Environmental Protection Agency, Region III
> Mail Code 3WP42
> 1650 Arch Street
> Philadelphia, PA 19103-2029
>
> Kelly Gable
> Assistant Regional Counsel
> U.S. Environmental Protection Agency, Region III
> Mail Code 3RC20
> 1650 Arch Street
> Philadelphia, PA 19103-2029
>
> Andrew Spejewski
> Stormwater Compliance Engineer

U.S. Environmental Protection Agency, Region I
5 Post Office Sq., Suite 100
Mail Code OES04-4
Boston, MA  02109-3912

For Force Majeure and Modification Purposes Only:

Lourdes Bufill
Attorney Advisor
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave, NW
Washington, DC  20460-0001

To the State of Maryland:

Principal Counsel
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Boulevard
Baltimore, MD 21230

Chief
Enforcement Division, Compliance Program
Water Management Administration
Maryland Department of the Environment
1800 Washington Boulevard
Baltimore, MD 21230

To the Commonwealth of Virginia:

Director
Department of Conservation and Recreation
Commonwealth of Virginia
203 Governor Street, Suite 302
Richmond, VA 23219

Elizabeth A. Andrews
Senior Assistant Attorney General and Chief
Environmental Section
Commonwealth of Virginia
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

To Builder:

> John F. Lehane
> Vice President, National Director of Storm Water Compliance
> Toll Brothers, Inc.
> 250 Gibraltar Road
> Horsham, PA  19044
> P: 215.293.5438
> jlehane@tollbrothersinc.com

> With a copy to:

> David P. Ross
> Crowell & Moring LLP
> 1001 Pennsylvania Ave., NW
> Washington, DC  20004
> P: 202.624.2682
> dross@crowell.com

65.	Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

66.	Notices provided pursuant to this Section will be deemed to have been submitted: (1) on the Business Day sent if provided by facsimile or electronic mail; (2) on the date postmarked if provided by mail; and (3) on the date picked up by the overnight delivery service if provided by overnight delivery.  The Parties may, by written mutual agreement, provide for an alternative method of delivery of notice.

## XIV.   EFFECTIVE DATE

67.	The Effective Date of this Consent Decree shall be the Date of Entry.

## XV.   RETENTION OF JURISDICTION

68.	The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or

effectuating or enforcing compliance with the terms of this Decree.  The Court shall retain jurisdiction after termination only for the purposes set forth in Paragraph 76 below.

XVI.   MODIFICATION

69.    Except as otherwise set forth in Paragraph 70 below, the terms of this Consent Decree, including any attached Appendices, may be modified by a written agreement signed by Builder and Federal Plaintiff (after consultation with State Plaintiffs) without approval of the Court.

70.    Any modification which constitutes a material change to the terms of the Consent Decree, including any material change to an Appendix, shall be effective only upon approval by the Court.

71.    Builder may propose minor modifications to the Appendices to this Consent Decree for the purposes of adding information, changing formatting as necessary to align the Appendices with an Applicable Permit or Builder's management needs, or adding or changing questions on the training tests in Appendix K for purposes of improving the test ("Minor Appendix Modification").  Builder may begin using a modified Appendix after submitting it to the EPA representatives listed in Section XIII (Notices).  This requirement does not apply to modifications of Site Inspection Report templates which solely add state-specific Site Inspection requirements.  If Federal Plaintiff determines that a Minor Appendix Modification does not comply with the terms of this Consent Decree, it shall notify Builder and provide a list of changes required to bring the submitted Appendix into compliance with this Decree.  Builder has thirty (30) days after receipt of the list of changes to incorporate Federal Plaintiff's list of changes.  The resulting Appendix shall supersede the original form or report and be considered a minor modification.

XVII.  TERMINATION

72.    The following conditions ("Conditions of Termination") are the exclusive

conditions for termination of this Decree and all of Builder's obligations hereunder.  This Decree

shall terminate under the procedures set forth in this Section when these Conditions of

Termination have been met:

a.    the passing of three years since the Date of Entry ("the Third

Anniversary");

b.    Builder has paid all civil penalties and related interest due under this

Decree;

c.    Builder has paid all stipulated penalties and related interest demanded

through the Third Anniversary by Federal Plaintiff under Paragraph 32, excluding any

stipulated penalties or interest that are subject to Dispute Resolution, as to which this

Court shall retain jurisdiction under Paragraph 75, below;

d.    Builder has established and implemented a management system designed

to fulfill its obligations under Paragraphs 8, 11, 12, 13, 14, 15 and 16;

e.    Builder has established and implemented a Training and Orientation

Program designed to fulfill its obligations under Paragraphs 18, 19 and 20;

f.    Builder has submitted all Lists of Sites, Projects, and Distressed Assets

required by Paragraph 9 as of the Third Anniversary;

g.    Builder has acquired or applied for coverage under an Applicable Permit

for all Sites existing as of the Third Anniversary; and

h.    Builder has submitted all National Reports required by Paragraph 17,

including the National Compliance Summary Report submitted following the Third

64

Anniversary.

73.    The following procedures for terminating this Decree shall govern (and the Parties intend that this process shall be resolved at the earliest possible time):

a.    Any time subsequent to the date forty-five (45) days prior to the Third Anniversary, Builder may submit to Federal Plaintiff a proposed motion to terminate the Decree ("Proposed Motion").  The Proposed Motion shall include a draft certification, that meets the requirements of 40 C.F.R. § 122.22, that Builder has fulfilled the Conditions of Termination.  Following receipt by Federal Plaintiff of the Builder's Proposed Motion, the Builder and Federal Plaintiff shall confer informally concerning the proposal and any disagreement that these parties may have as to whether Builder has met the Conditions of Termination.

b.    No sooner than forty-five (45) days after delivery of the Proposed Motion to Federal Plaintiff, Builder may file a motion to terminate this Decree.  This motion shall contain a final certification, that meets the requirements of 40 C.F.R. § 122.22, that Builder has fulfilled the Conditions of Termination as of the date of the filing of the motion.

(i)    If the Federal Plaintiff, after consultation with the State Plaintiffs, agrees that the Conditions of Termination have been met, it shall join in the motion to terminate.  In that event, the Court shall enter an order terminating this Decree effective as of the filing of said motion.

(ii)    If the Federal Plaintiff, after consultation with the State Plaintiffs, does not agree that the Conditions of Termination have been met, it shall serve its opposition to the motion in accordance with the local rules of the Court.  Builder

65

may reply in accordance with the local rules of the Court. If the Court finds based upon the preponderance of the evidence that Builder has met the Conditions of Termination, it shall order this Decree terminated effective as of the date of filing the motion to terminate.

(iii)    If Federal Plaintiff neither joins in the motion to terminate nor files a timely opposition, upon Builder's request the Court shall enter an order terminating the Decree effective as of the date of filing the motion to terminate.

74.    If the initial motion to terminate is denied by the Court, one or more renewed motion(s) to terminate may be filed. The Court shall decide a renewed motion to terminate based on the Conditions of Termination set forth in Paragraph 72, reviewed for fulfilling the requirements as of the Third Anniversary date, except that if the Court has previously found that conditions 72.d. (management systems) and 72.e. (training and orientation programs) had not been met, then Builder's compliance with such unmet conditions shall be determined as of the date of filing of the renewed motion. If Builder has met the Conditions of Termination, the Court shall order this Decree terminated effective as of the date of filing of the renewed motion.

75.    After the Consent Decree has been terminated in accordance with Paragraphs 72 - 74, this Court shall retain jurisdiction over this Decree only for the following purposes:

a.    to resolve any dispute concerning unresolved matters subject to dispute resolution pursuant to Section IX (Dispute Resolution);

b.    to resolve any enforcement action pending on the termination date under this Decree; and

c.    to resolve any outstanding stipulated penalties demanded and owing based on the National Compliance Summary Report submitted following the Third

66

Anniversary;

provided that this Paragraph applies only to matters arising prior to termination: it does not authorize the reopening of this Decree or any extension of the compliance program imposed by this Decree.

## XVIII. PUBLIC PARTICIPATION

76.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The Federal Plaintiff reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Builder consents to entry of this Consent Decree, in its present form, without further notice and agrees not to withdraw from or oppose entry of this Consent Decree, in its present form, by the Court or to challenge any provision of the Decree, unless the Federal Plaintiff has notified Builder in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

77.     The undersigned representative of each Party certifies that he or she is authorized to execute this Consent Decree and to legally bind the Party or Parties he or she represents.

78.     This Consent Decree may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

79.     Builder agrees to waive summons and the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court and agrees to accept service of the complaint by mail.

## XX.   INTEGRATION

80.     This Consent Decree constitutes the final, complete, and exclusive agreement and

67

understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Appendices, which are attached to and incorporated in this Decree, and deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.  The Parties further acknowledge that the Appendices may be modified pursuant to Section XVI (Modification).

## XXI.    APPENDICES

81.    The following Appendices are attached to and incorporated into this Consent Decree:

Appendix A:    Site List
Project List
Distressed Assets List

Appendix B:    Instructions for Storm Water Plan Preparation

Appendix C:    Pre-Construction Inspection and Review Form

Appendix D:    Site Inspection Report

Appendix E:    Weekly Division Log
Weekly National Log

Appendix F:    Quarterly Compliance Inspection Form
Quarterly Compliance Review Form

Appendix G:    Division-Wide Compliance Summary Report

Appendix H:    National Compliance Summary Report

Appendix I:    General Training Program Syllabus

Appendix J:    Storm Water Compliance Representative Training Program Syllabus

Appendix K:   Training Exam

Appendix L:   Listed Contractors

Appendix M:   List of Contractor Dos and Don'ts

Appendix N:   List of Sites Subject to Covenant Not to Sue

## XXII.   FINAL JUDGMENT

82.      Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the Federal Plaintiff, the State of

Maryland, the Commonwealth of Virginia, and Builder.  The Court finds that there is no just

reason for delay and therefore enters this judgment as a final judgment under Federal Rules of

Civil Procedure 54 and 58.


IT IS HEREBY SO ORDERED this _____ day of _____,
2012


_____
UNITED STATES DISTRICT JUDGE
Eastern District of Pennsylvania

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. Toll Brothers, Inc. et al., subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

Dated: 6/15/12

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

LEIGH P. RENDÉ
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
202-514-1461 (phone)
202-616-6583 (fax)
leigh.rende@usdoj.gov

ZANE DAVID MEMEGER
United States Attorney

MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division

CHARLENE K. FULLMER
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
215-861-8301 (phone)
215-861-8618 (fax)
Charlene.fullmer@usdoj.gov

71

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. Toll Brothers, Inc. et al.</u>, subject to the public notice requirements of 28 C.F.R. § 50.7.


FOR THE UNITED STATES OF AMERICA (Continued):


Dated: 6/1/12

_____
CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Suite 3204
Washington, DC  20460


_____
PAMELA J. MAZAKAS
Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460


_____
MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460


_____
LOURDES BUFILL
Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Mail Code 2243A, Room 3120
Washington, DC 20460

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States <i>et al</i>. v. Toll Brothers, Inc. <i>et al</i></u>., subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA (Continued):

Dated: 6/11/12

SHAWN M. GARVIN
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

MARCIA E. MULKEY
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

KELLY GABLE
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

73

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States <i>et al</i>. v. Toll Brothers, Inc. <i>et al.</i></u>, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES (Continued):


Dated: 05/18/12

SUSAN STUDLIEN
Director, Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region I
5 Post Office Square, Suite 100
Boston, MA 02109-3912


JEFFREY KOPF
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region I
5 Post Office Square, Suite 100
Mail Code OES04-4
Boston, MA 02109-3912

74

WE HEREBY CONSENT to the entry of the Consent Decree in United States *et al*. v. Toll Brothers, Inc. *et al*., subject to the public notice requirements of 28 C.F.R. § 50.7.


FOR THE STATE OF MARYLAND:



DOUGLAS F. GANSLER
Attorney General of Maryland



Dated: 6/12/12

STEVEN R. JOHNSON
Assistant Attorney General
Maryland Department of the Environment
1800 Washington Boulevard
Baltimore, MD 21230
410-537-3049
srjohnson@mde.state.md.us


75

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States *et al.* v. Toll Brothers, Inc. *et al.*</u>, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE COMMONWEALTH OF VIRGINIA:

THE HONORABLE KENNETH T. CUCCINELLI II
Attorney General of Virginia

Dated: 6/13/12

ELIZABETH A. ANDREWS
Senior Assistant Attorney General
Commonwealth of Virginia
Office of the Attorney General
900 East Main Street
Richmond, VA 23219
804-225-4205 (phone)
eandrews@oag.state.va.us

WE HEREBY CONSENT to the entry of the Consent Decree in United States *et al*. v. Toll Brothers, Inc. *et al*.

FOR TOLL BROTHERS, INC. *ET AL*.:

Dated: **MAY 18, 2012**

JOHN K. MCDONALD
Senior Vice President and General Counsel
Toll Brothers, Inc.
250 Gibraltar Road
Horsham, PA 19044
215-938-3051 (phone)
jmcdonald@tollbrothersinc.com

RICHARD E. SCHWARTZ
Attorney for Toll Brothers, Inc.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
202-624-2905 (phone)
202-628-5116 (fax)
rschwartz@crowell.com

77

# APPENDIX A

Site List

| Site Name | Site Location (the street address, not the address of the Permit Holder) | County | State | Latitude | Longitude | Date PCIR was signed | Estimated Disturbed Acreage | Permit Number | Name of Permit Holder | Notice of Termination Date |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |

Number of Sites owned or operated by an entity in which Toll Brothers has an interest other than a wholly-owned interest: _____

Project List

| Project Name | Street Address | City | State | ZIP Code |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Distressed Assets

| Project or Site Name | Street Address | City | State | ZIP Code | Distressed Asset Description (See Paragraph 1.n) | | Date Title Acquired | Status Of Project Or Site |
|---|---|---|---|---|---|---|---|---|
| | | | | | How Interest Was Acquired | Why Project Or Site Was Distressed | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**APPENDIX B**

**INSTRUCTIONS FOR STORM WATER PLAN PREPARATION**

These guidelines are intended to aid division personnel in contracting for consulting services for the preparation of Storm Water Plans ("SWPs"). They are also intended to act as a checklist by which consultants and Toll Brothers ("Toll") personnel can define the scope of work expected. These instructions must be provided to the SWP preparer.

## Abbreviations

| | |
|---|---|
| EPA | U.S. Environmental Protection Agency |
| NPDES | National Pollutant Discharge Elimination System |
| SWP | Storm Water Plan |
| NOI | Notice of Intent |
| NOT | Notice of Termination |
| MS4 | A municipal separate storm water collection system |
| BMP | Best Management Practice |

## Performance Guidelines

There are three performance guidelines to which SWPs should conform:

1. **Meet legal requirements**. The SWP must satisfy both the regulatory requirements set forth in the Applicable Permit and the requirements of the Consent Decree.

   a. **Regulatory Requirements**. In states where U.S. EPA has delegated to the state the responsibility to enforce the requirements of the federal Clean Water Act NPDES permitting program, the relevant "regulatory requirements" are set forth in the state's NPDES permit (general or individual) that applies to the particular site. In states where EPA has retained administrative control over the Clean Water Act NPDES permitting program, the relevant "regulatory requirements" are set forth in the "National Pollution Discharge Elimination System (NPDES) General Permit for Discharge from Large and Small Construction Activities" or any individual NPDES permit that applies to the particular site.

   b. **Consent Decree Requirements**. Preparation of the SWP shall also be guided by the requirements of Paragraph 11(c) of the Consent Decree. Paragraph 11(c) of the Consent Decree requires that each SWP:
      (i) be site specific;
      (ii) identify the BMPs that will be used for each anticipated major phase of construction;
      (iii) incorporate the inspection frequency and routine maintenance deadlines under the Applicable Permit; and

- 1 -

(iv) include clear, concise descriptions of site-specific BMPs to implement the requirements of the Applicable Permit and to guide those responsible for overseeing implementation of the SWP at each stage of construction.

c. **Preparer Requirements.** The SWP should include a statement by the SWP preparer that the development of the SWP was guided by the requirements of Paragraph 11(c) of the Consent Decree, these Instructions, and the Applicable Permit.

2. **Be easy to follow and implement**. Although it is important that the SWP be easy for state or federal inspectors to follow and understand, it is equally or more important that the SWP be written in such a manner that it is easy for Toll's operational personnel to understand and implement. The SWP should not be prepared in a vacuum by the drafter, but should reflect discussions and agreements that have been made between the preparer and Toll's operational personnel.  These discussions and agreements should include such things as construction sequencing and types of BMPs that each individual Toll division feels are the most cost effective and easiest to maintain.

3. **Be efficient**. There are many ways in which the reduction of pollutants from storm water discharges can be achieved. It is the goal of Toll to do so in the most efficient and affordable manner. When analyzing affordability, maintenance costs must be considered with installation and material costs to determine the proper solution for each situation.

## Contents of the SWP (Checklist)

Check the Applicable Permit to see which of the following are required. If they are, they should be included in the SWP:

**I.    A Copy of the NOI and Other Storm Water Related Permits That Are Required for the Site**

Copies of any federal, state, or local storm water related permits should also be included. Careful consideration should be given to ensuring that all relevant permits have been or will be obtained, including whether there are any contractors or subcontractors that need separate storm water permits.

**II.      Storm Water Plan (SWP) Certification**

Refer to the Applicable Permit for SWP certification requirements. The Applicable Permit may require that the SWP be:

a) Signed by the owner of the site;
b) Signed by the operator of the site; and/or
c) Signed by the person who is responsible for the preparation of the SWP.

The Applicable Permit may also include a requirement to maintain a log to record all amendments to the SWP and corresponding certifications.

An example of a Title Block for SWP certification is shown below:

Toll Bros., Inc.

By:
Name:
Title:

**III.      Contact Information**

The SWP should include the names, phone numbers and a description of the duties for each person who is responsible for ensuring compliance with storm water requirements at a particular site.

The SWP should include the name of the Site Storm Water Compliance Representative and Division Storm Water Compliance Representative.

**IV.      Notice and Recordkeeping**

a) Posting NOI. The SWP should set forth the locations where the NOI is to be posted.
b) Location of SWP and Inspection Reports. The SWP should set forth where the SWP and related records, including Inspection Reports, should be maintained.
c) Retention of Records. The SWP should set forth the retention requirements for the SWP and site-related storm water documents.

**V.      Responsibilities of Owners and Operators**

A list of activities that must be completed by the owner(s) or operator(s) and who is responsible for each activity.

- 3 -

## VI.    Definition of Area

a) Site name and address (including county or governmental subdivision) or other available location information, including any location information required by the Applicable Permit or NOI.

b) Name of any water of the United States or MS4 into which the Site discharges storm water.

c) Name of the agency or agencies that have jurisdictional authority for storm water pollution prevention.

d) The function of the Site (i.e., single-family detached residential, townhouse, condominium development).

e) A description of any other activities such as dedicated crusher plants, asphalt plants, equipment staging areas, or material storage areas that may operate on the site.

f) Estimates of the total area expected to be disturbed by excavation, grading, or other construction activities, including off-site borrow pits and fill areas.

g) A general location map (e.g., USGS quadrangle map, a portion of a city or county map, or other map with enough detail to show the location of the construction site and waters of the United States within one mile of the site).

## VII.    Site Plan and BMP Map

a) Direction of storm water flow and approximate slopes anticipated after major grading activities.

b) Areas of soil disturbance and areas that will not be disturbed.

c) Locations of major structural and non-structural BMPs.

d) Locations where stabilization practices are expected to occur.

e) Locations of off-site material, waste, borrow or equipment storage areas.

f) Locations of all waters of the United States required to be mapped under the Applicable Permit.

g) Locations on the site, if applicable, where storm water discharges to waters of the United States.

h) Areas where final stabilization has been accomplished and no further construction-phase permit requirements apply.

## VIII. Endangered and Threatened Species and Critical Habitat Protection

## IX. Historic Properties Protection

- 4 -

**X. Statement and Description of Storm Water Discharge Management Controls to Reduce Pollutants**

 a) A description of all pollutant control measures (*i.e.* BMPs) that will be implemented as part of the construction activity to control pollutants in storm water discharges. Each major activity in the site construction process should be clearly defined and the BMPs related to that activity should be listed.
 b) A description of interim and permanent stabilization practices for the site, including a schedule of when the practices will be implemented.
 c) Dates when major grading activities occur.
 d) Dates when Construction Activities temporarily or permanently cease on a portion of the site.
 e) Dates when stabilization measures are initiated.
 f) A description of structural practices to divert flows from exposed soils, retain/detain flows or otherwise limit runoff and/or the discharge of pollutants from exposed areas of the site.
 g) A description of all post-construction storm water management measures that will be installed during the construction process to control pollutants in storm water discharges after construction operations have been completed.
 h) A description of the measures to prevent the discharge of solid materials, including building materials, to the waters of the United States.
 i) A description of the measures to minimize, to the extent practicable, offsite vehicle tracking of sediments onto paved surfaces and the generation of dust.
 j) A description of controls and measures that will be implemented to control the storm water discharges from on-site crusher and asphalt plants.

**XI.    Description of Non-Storm Water Discharge Management Controls to Reduce Pollutants**

 a) Discharges from fire fighting activities.
 b) Fire hydrant flushing.
 c) Water used to wash vehicles where detergents are not used.
 d) Water used to control dust.
 e) Water used to flush waterlines and wash down buildings.
 f) Air conditioning condensate.
 g) Uncontaminated spring water, groundwater and discharges from foundation drains.
 h) Uncontaminated excavation dewatering.
 i) Landscape irrigation.

**XII.    Procedures for Dealing with Spills and Releases in Excess of Mandated Reportable Quantities**

    a) A list of emergency contact numbers.
    b) A table listing types of listed materials expected to be on site and the reportable quantity of each.
    c) Procedures for dealing with and reporting spills and releases.

**XIII.    Maintenance of Storm Water Discharge Management Controls**

A description of the maintenance requirements for the BMPs that are installed.

**XIV.    Inspections**

    a) Frequency of inspection.
    b) Standardized forms for inspection reports.

**XV.    Procedures for Updating and Modifying the SWP**

    a) A statement explaining when the SWP must be amended.
    b) A statement of the procedure that should be followed to update and modify the SWP.

**XVI.    Notice of Termination**

    a) When a NOT is filed.
    b) Procedure for filing a NOT.

**APPENDIX C**

## Storm Water Compliance Pre-Construction Inspection and Review

**Site Name:** _____    **Permit Holder:** _____

**City:** _____    **County:** _____    **State:** _____

**Personnel:** _____    _____    _____
Division SWC Representative        Site SWC Representative        Site  SWC Representative

**Permit Number(s):** _____

**Inspection Area:** _____

**Inspection Date:** _____


**Comments:**


**Statements:**

1. SITE NAME is covered under a National Pollutant Discharge Elimination System (or State equivalent)
Permit Number(s): _____

the Permit(s) Holder is/are: _____

2. If applicable, SITE NAME has a complete, signed, and certified Storm Water Plan (SWP) that complies with the requirements of Toll Brothers' Consent Decree, including
- identifying stages of construction and the storm water controls required by each stage;
- identifying site inspection frequency and routine maintenance deadlines required by the Applicable Permit; and
- certification by the SWP preparer that its development was guided by the requirements of Paragraph 11(c) of the Consent Decree, and the National SWP Criteria attached as Appendix B to the Consent Decree.

3. SITE NAME has a SWP that is certified if and as required by the Applicable Permit.

4. The Primary Site Storm Water Compliance Representative is USER , the Secondary Site Storm Water Compliance Representative is USER , and he/she/they (1) reviewed the Storm Water Plan, and (2) is/are Storm Water Trained.

5. The storm water control measures called for in the current stage of construction are properly located and installed.

6. As applicable, the installed storm water controls appear to be working properly and are appropriate for existing conditions.

A Storm Water Compliance Representative must review, confirm, and sign (submit) this Pre-Construction Inspection and Review. Do not commence Construction Activity, including any mass clearing or grading of the site, prior to the completion of perimeter erosion prevention and sediment control measures, or signing (submitting) this Form.


**Submitted By:** _____    **Submitted Date:** _____

**This form must be kept with the SWP.**

**APPENDIX D**

## Site Inspection Report

Site Name: _____  Inspection Area: _____

Division: _____  Inspection Date: _____  Inspector: _____

Permits: _____

Land Parcels: _____

Weather Conditions (check one):  ☐ Dry   ☐ Rain   ☐ Snow   ☐ Icy

Inspection Type (check one):  ☐ Regular   ☐ Final

Rainfall Amount at Time of Inspection: _____ (in inches)

Rainfall Duration: _____ (in hours)   ☐ Pre-Storm

| | General | Yes | No | N/A |
|---|---|---|---|---|
| A. | Is the Storm Water Plan ("SWP") on site or its location posted? | ☐ | ☐ | ▨ |
| B. | If required, are the Applicable Permit and/or NOI on site? | ☐ | ☐ | ▨ |
| C. | Is contact information for the Site Storm Water Compliance Representatives provided on site and is it correct? | ☐ | ☐ | ▨ |
| D. | Since the last inspection, has Toll Brothers received written notice of a federal, state, or local inspection evaluating compliance with the Applicable Permit? | ☐ | ☐ | ▨ |
| E. | Was the Site Inspection Report for the last inspection signed by the Site Storm Water Compliance Representative and certified if and as required by the Applicable Permit? | ☐ | ☐ | ☐ |

| | Maintenance | Yes | No | N/A |
|---|---|---|---|---|
| F. | Is there an excess of sediment or other pollutants exiting the site? | ☐ | ☐ | ▨ |
| G. | Are off-site roads/gutters free of excessive sediment from the site? | ☐ | ☐ | ☐ |
| H. | Are exit/entrance controls properly located and in working condition, with no maintenance necessary? | ☐ | ☐ | ☐ |
| I. | Are exposed areas stabilized as required? | ☐ | ☐ | ☐ |
| J. | Are stockpiles located and stabilized as required? | ☐ | ☐ | ☐ |
| K. | Are other BMPs properly located, in working condition, and no repairs necessary? | ☐ | ☐ | ☐ |
| L. | Are concrete, paint, and stucco washout areas properly located, in working condition, and no maintenance necessary? | ☐ | ☐ | ☐ |
| M. | Are hazardous materials managed as required? | ☐ | ☐ | ☐ |
| N. | Are trash, construction debris, and other solid wastes managed as required; and on-site roads/gutters free of excessive sediment? | ☐ | ☐ | ☐ |
| O. | Are portable toilets properly located and maintained? | ☐ | ☐ | ☐ |
| P. | Are the Site Storm Water BMPs and the SWP consistent with each other? | ☐ | ☐ | ☐ |
| Q. | Are there ruts, gullies, or other signs of accelerated erosion? | ☐ | ☐ | ☐ |
| R. | Are there any other compliance issues, inadequate BMPs, additional BMPs, or improvements this Site should address? | ☐ | ☐ | ☐ |

Please note that this form must be kept with the Storm Water Plan ("SWP")

## Site Inspection Report

Site Name: _____     Inspection Area: _____

Division: _____     Inspection Date: _____     Inspector: _____

Land Parcels: _____

| Notes |
|---|
|  |

### Responsive Action Log

### Unaddressed Action Items from Previous Inspections

| Reference Number | Action Item and Location | Date Item Noted | Date Corrected | Due Date | Addressed By | Responsive Action Taken |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

### New Action Items

| | | | | | | |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Please note that this form must be kept with the Storm Water Plan ("SWP")

**<u>Site Inspection Report</u>**

Site Name: _____    Inspection Area: _____

Division: _____    Inspection Date: _____    Inspector: _____

Land Parcels: _____

INSERT CERTIFICATION IF AND AS REQUIRED BY THE APPLICABLE PERMIT

_____          _____    _____
Name of Inspector                                          Signature of Inspector                                Date

INSERT CERTIFICATION IF AND AS REQUIRED BY THE APPLICABLE PERMIT

**This form must be signed by a Site Storm Water Compliance Representative.**

_____          _____    _____
Site Storm Water Compliance Representative            Signature                                                Date

Please note that this form must be kept with the Storm Water Plan ("SWP")

SWPPP Form No. 1                                                                               Rev. Date 4/20/2012

## Rain Event Site Inspection Report

Site Name: _____       Inspection Area: _____

Division: _____   Inspection Date: _____   Inspector: _____

Land Parcels: _____

Rainfall Amount at Time of Inspection: _____ (in inches)

Rainfall Duration: _____ (in hours)   ☐ Pre-Storm

**Walk through the entire construction area and look for**

1. **pollutant discharges;**
2. **excessive sediment on off-site** roads and gutters;
3. **erosion control measures that may have failed or been damaged;**
4. **ruts, gullies, or other signs of accelerated erosion;**
5. **existing erosion control measures that are inadequate; and**
6. **areas which require additional erosion control measures.**

| | **Maintenance** | **Yes** | **No** | **N/A** |
|---|---|---|---|---|
| F. | Is there an excess of sediment or other pollutants exiting the site? | ☐ | ☐ | ▨ |
| G. | Are off-site roads/gutters free of excessive sediment from the site? | ☐ | ☐ | ☐ |
| K. | Are other BMPs properly located, in working condition, and no repairs necessary? | ☐ | ☐ | ☐ |
| Q. | Are there ruts, gullies, or other signs of accelerated erosion? | ☐ | ☐ | ☐ |
| R. | Are there any other compliance issues, inadequate BMPs, additional BMPs, or improvements this Site should address? | ☐ | ☐ | ☐ |

| **Notes** |
|---|
| |

### Responsive Action Log

### Unaddressed Action Items from Previous Inspections

| Reference Number | Action Item and Location | Date Item Noted | Date Corrected | Due Date | Addressed By | Responsive Action Taken |
|---|---|---|---|---|---|---|
| | | | | | | |

Please note that this form must be kept with the Storm Water Plan ("SWP")

SWPPP Form No. 2                                                                 Rev. Date 4/20/2012

**Rain Event Site Inspection Report**

Site Name: _____     Inspection Area: _____

Division: _____     Inspection Date: _____     Inspector: _____

Land Parcels: _____

**New Action Items**

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Please note that this form must be kept with the Storm Water Plan ("SWP")

SWPPP Form No. 2                                                                                          Rev. Date 4/20/2012

**Rain Event Site Inspection Report**

Site Name: _____          Inspection Area: _____

Division: _____    Inspection Date: _____    Inspector: _____

Land Parcels: _____

INSERT CERTIFICATION IF AND AS REQUIRED BY THE APPLICABLE PERMIT

_____          _____   _____
Name of Inspector                              Signature of Inspector                         Date

INSERT CERTIFICATION IF AND AS REQUIRED BY THE APPLICABLE PERMIT

**This form must be signed by a Site Storm Water Compliance Representative.**

_____          _____   _____
Site Storm Water Compliance Representative          Signature                              Date

Please note that this form must be kept with the Storm Water Plan ("SWP")

SWPPP Form No. 2                                                                      Rev. Date 4/20/2012

# User Instructions for Site Inspection Report

## GENERAL INSTRUCTIONS

*These General Instructions describe the requirements for completion of the information and questions contained in the Site Inspection Report. There are separate instructions for access to and use of Toll Brothers' Storm Water Compliance reporting application.*

- This form consists of the Site Inspection Report and Responsive Action Log.

- Only the Site Storm Water Compliance Representative and his/her Designee, including a Storm Water Consultant, are permitted to undertake the inspection required by this form. If you are not this person, you must contact the Division Storm Water Compliance Representative immediately.

- Each Action Item must have a corresponding Responsive Action. An Action Item is a condition that requires action to be taken to achieve or maintain compliance with Storm Water Requirements. A Responsive Action is an action taken to address an Action Item or to achieve or maintain compliance with Storm Water Requirements.

- Before proceeding with any inspection, you must first verify that the immediately previous inspection was conducted and the Site Inspection Report was completed. You must also determine whether all Responsive Actions identified from the prior inspection (including any rain events), if any, were undertaken within the time period allowed by the Applicable Permit.

- You must restate or carry over to the current Responsive Action Log any Responsive Action not completed since the last Regular Inspection or Rain Event Inspection regardless of the time period allowed by the Applicable Permit. For each Responsive Action carried forward, you should make a note in the prior Responsive Action Log that the Responsive Action has been carried forward. **Do not leave any blanks in a prior Responsive Action Log.**

- You must answer every question. Check "Yes", "No", or "N/A" for each question as appropriate. A response of "N/A" is only permitted where the designated area under "N/A" is not blocked out.

- If you check "No" for Questions A, B, C, E, G, H, I, J, K, L, M, N, O, and/or P, or "Yes" for Questions D, F, Q, and/or R on the Site Inspection Report, you must provide a reference number under the "Reference Number" column on the Responsive Action Log for each Action Item identified. Reference Numbers have a letter and a number. The first character matches the letter designation of the applicable question. The second character is numerical starting with number 1. Responsive Action reference numbers shall be successive thereafter as to the numerical portion, for example, F-1, F-2, F-3... G-1, G-2... H-1, I-1, etc.

- You must sign and date the completed Site Inspection Report. If you are a Storm Water Consultant or a Designee for the Site Storm Water Compliance Representative and you complete this form, the Site Storm Water Compliance Representative must review and sign the completed form as well.

- A copy of each completed Site Inspection Report must be kept with the SWP.

- At the conclusion of the Site Inspection, submit the Inspection Report to the Toll Brothers' Storm Water Compliance intranet-based reporting application.

- You must record the following information on each Site Inspection Report:

  ✓ Site Name. Insert the name of the Toll Brothers' Community.

  ✓ Inspection Area. Enter the name of the portion(s) of the Site that is (are) being inspected.

  ✓ Division. Insert the name of the Toll's operating division responsible for the Site identified on the form.

  ✓ Inspection Date. Insert the date on which the inspection is being performed.

  ✓ Inspector. Enter the name of the person performing the inspection.

  ✓ Weather conditions. Check the appropriate description that best describes weather conditions during the inspection.

  ✓ Type of Inspection. Check the inspection type that represents the purpose of the inspection. Only one inspection type may be checked. A Regular Inspection is one conducted according to the regular schedule of inspections for a Site, and includes rain event inspection information, when applicable. A Final Inspection is the last inspection planned prior to obtaining the Notice of Termination.

  ✓ Rainfall Amount at Time of Inspection: Enter the total amount of rain (in inches) that has fallen for the rainfall event covered by the inspection.

  ✓ Rainfall Duration:  Enter the length of the rainfall event in hours.

  ✓ Pre-Storm Box:  Check this box if you are performing an inspection in advance of a predicted rainfall event. (California is the only state with the current requirement to perform a Pre-Storm Inspection.)


### INSTRUCTIONS FOR COMPLETING INDIVIDUAL QUESTIONS

- You must respond to all of the following questions on each and every Site Inspection Report:

  A.  **Is the Storm Water Plan ("SWP") on site or its location posted?** – You must verify that the SWP is either at the construction office if the Site has one, or that the location of the SWP is posted.

B.    **If required, are the Applicable Permit and/or NOI on site?** – You must verify that the Applicable Permit and notification letter (if applicable) are on site if required under the Applicable Permit. Maintain a complete copy of the Applicable Permit in the SWP Binder.

C.    **Is contact information for the Site Storm Water Compliance Representatives provided on site and is it correct?** – You must verify that the name(s) and the phone number(s) of the Site Storm Water Compliance Representative(s) are located in a conspicuous place on site and are correct and legible.

D.    **Since that last inspection, has Toll Brothers received written notice of a federal, state, or local inspection evaluating compliance with the Applicable Permit?** - The notice contemplated by this question is written notice from a federal, state, or local entity regarding a storm water inspection evaluating compliance with the Applicable Permit (i.e., the NPDES or State equivalent storm water permit). Local inspections evaluating compliance with local programs (e.g. post-construction stormwater management of locally approved erosion and sediment control) do not require an answer of yes to this question. If, however, Toll has received written notice of a federal, state, or local inspection evaluating compliance with the Applicable Permit, you must record the name of the agency that performed the inspection, the name and the position of the person that performed the inspection for the agency, and the date of the inspection. Further, you must include on the Responsive Action Log a description of the Action Items that were identified on the federal, state, or local inspection.

E.    **Was the Site Inspection Report for the last inspection signed by the Site Storm Water Compliance Representative and certified if and as required by the Applicable Permit?** – You must verify that the Site Inspection Report for the prior inspection was signed and, if required under the Applicable Permit, verified by the person undertaking that inspection, whether that person was the Site Storm Water Compliance Designee or the Site Storm Water Compliance Representative. You must also verify the Site Storm Water Compliance Representative reviewed and signed the form if the Site Storm Water Compliance Designee conducted the Site Inspection.

- **Maintenance** -   Assign a separate reference number to each Action Item identified within the following categories and briefly describe the Responsive Action required to address the Action Item.

F.    **Is there an excess of sediment or other pollutants exiting the site?** – You must verify that neither an excess of sediment nor an excess of other pollutants are exiting the site. You should check applicable BMPs such as outfalls, exit/entrance controls, site perimeter controls, receiving water courses and adjacent off-site areas for excessive sediment or other excessive pollutant discharges. You should determine and record the source of the excessive sediment or other pollutants. If an off-site property is discharging sediment or

pollutants onto the site, record that information and whether the off-site source is contributing to the excessive discharge from the site.

G.  **Are off-site roads/gutters free of excessive sediment from the site?** – You must verify that the roads adjacent to the site are free of excessive sediment. You should determine and record the source of the excessive sediment. If an off-site property is contributing to or causing the excessive sediment in the off-site roads or gutters, record that information.

H.  **Are exit/entrance controls properly located and in working condition, with no maintenance necessary?** – You must verify that exit/entrance controls are properly located, in working condition, and no repairs are necessary. You should check that exit/entrance controls, such as stone tracking pads, rumble grates, and related controls for the construction entrance and other access points are in place and are maintained pursuant to the SWP.

I.  **Are exposed areas stabilized as required?** – You must verify that exposed areas are stabilized, if and as required by the Applicable Permit. Exposed areas are any areas that have been disturbed or have otherwise lost natural cover. You should check that areas where construction activity has ceased or has been temporarily suspended are stabilized in accordance with the SWP.

J.  **Are stockpiles located and stabilized as required?** – You must verify that stockpiles are located and stabilized as required. You should check that stockpiles are located in areas where they may minimize the potential for discharging excessive sediment from the site or onto any road or gutter and that they have been stabilized in accordance with the SWP.

K.  **Are other BMPs properly located, in working condition, and no repairs necessary?** – You must verify that BMPs are properly located and in working condition and that no repairs are necessary. You should check that BMPs (including perimeter controls, soil stabilization techniques, sediment ponds/traps and inlet protection) are properly placed, appear to be working, and are maintained in accordance with the SWP.

L.  **Are concrete, paint, and stucco washout areas properly located, in working condition, and no maintenance necessary?** – You must verify that concrete, paint, and other washouts are properly placed, appear to be working, and are maintained in accordance with the SWP.

M.  **Are hazardous materials managed as required?** – You must verify that hazardous materials are managed as required. You should check that storage and containment areas and controls are implemented in accordance with the SWP, and confirm that hazardous materials are properly managed (no leaks or spills).

N.  **Are trash, construction debris, and other solid wastes managed as required; and on-site roads/gutters free of excessive sediment?** – You must verify that trash, construction debris, and other solid wastes are managed as required. You should check that controls for the collection and storage of

trash, construction debris, and other solid wastes are properly placed, appear to be effective, and are maintained in accordance with the SWP. You must verify that the on-site roads and gutters are free of excessive sediment.

O. **Are portable toilets properly located and maintained?** – You must verify that portable toilets are provided and properly located. You should check that portable toilets are located off roads and away from gutters and inlets and are properly anchored and maintained.

P. **Are the Site Storm Water BMPs and the SWP consistent with each other?** – You must verify that site BMPs and the SWP are consistent with each other. You should check that the BMPs shown on the SWP for the current stage of construction exist on site, and that the BMPs that exist on site are shown on the SWP. In particular, you must make sure that any map or figure within the SWP is consistent with what has been installed on the ground. Even if we have installed additional BMPs not originally called for in the SWP, the additional BMPs must be shown on the map.

Q. **Are there ruts, gullies, or other signs of accelerated erosion?** – You must verify that there are no signs of accelerated erosion, including ruts or gullies. Be certain to check all unstabilized areas, slopes, and conveyance swales and ditches.

R. **Are there any other compliance issues, inadequate BMPs, additional BMPs, or improvements this Site should address?** – You must verify that the Site is in compliance with other conditions of the Applicable Permit, and all BMPs are adequate and performing to the requirements of the SWP.

# USER INSTRUCTIONS FOR RAIN EVENT SITE INSPECTION REPORT

## GENERAL INSTRUCTIONS

This form is to be used when a NPDES Rain Event Inspection is required by the Applicable Permit. Do not use this form for Regularly Scheduled Inspections.

When a rain event occurs in conjunction with a regularly scheduled inspection (*e.g.* the community receives ½" of rain that ends less than 24 hours before the regularly scheduled inspection day), use the Regular Site Inspection Report.

This form will be used when a rain event occurs at all other times, including weekends.

- Within 24 hours of a rain event occurring, complete the Rain Event Site Inspection Report.

- Complete the Site Name, Inspection Area, Division, Inspection Date, Inspection Time, and Inspector's Name information at the top.

- List the Rainfall Amount received and the length of the storm (in hours) at the Site. Obtain the information from the on-site rain gauge, or from a weather information website for your location. Check the Pre-Storm box if you are performing an inspection in advance of a predicted rainfall event (currently only required by California).

## INSTRUCTIONS FOR COMPLETING INDIVIDUAL QUESTIONS

Walk through the entire construction area and look for signs of

1. pollutant discharges;
2. excessive sediment on off-site roads and gutters;
3. erosion control measures that may have failed or been damaged;
4. ruts, gullies, or other signs of accelerated erosion;
5. existing erosion control measures that are inadequate; and
6. areas which require additional erosion control measures.

- You must respond to all of the following questions on each and every Rain Event Site Inspection Report.

    F. **Is there an excess of sediment or other pollutants exiting the site?** – You must verify that neither an excess of sediment nor an excess of other pollutants are exiting the site. You should check applicable BMPs such as outfalls, exit/entrance controls, site perimeter controls, receiving water courses and adjacent off-site areas for excessive sediment or other excessive pollutant discharges. You should determine and record the source of the excessive sediment or other pollutants. If an off-site property is discharging sediment or pollutants onto the site, record that information and whether the off-site source is contributing to the excessive discharge from the site.

G. **Are off-site roads/gutters free of excessive sediment from the site?** – You must verify that the roads adjacent to the site are free of excessive sediment. You should determine and record the source of the excessive sediment. If an off-site property is contributing to or causing the excessive sediment in the off-site roads or gutters, record that information.

K. **Are other BMPs properly located, in working condition, and no repairs necessary?** – You must verify that BMPs are properly located and in working condition and that no repairs are necessary. You should check that BMPs (including perimeter controls, soil stabilization techniques, sediment ponds/traps and inlet protection) are properly placed, appear to be working, and are maintained in accordance with the SWP.

Q. **Are there ruts, gullies, or other signs of accelerated erosion?** – You must verify that there are no signs of accelerated erosion, including ruts or gullies. Be certain to check all unstabilized areas, slopes, and conveyance swales and ditches.

R. **Are there any other compliance issues, inadequate BMPs, additional BMPs, or improvements this Site should address?** – You must verify that the Site is in compliance with other conditions of the Applicable Permit, and all BMPs are adequate and performing to the requirements of the SWP.

# INSTRUCTIONS FOR COMPLETING THE RESPONSIVE ACTION LOG

- You must record each reference number on the Responsive Action Log in the first column under "Reference Number". Each reference number must be listed on a separate line.

- For each reference number, you must identify in the "Action Item and Location" column the condition that requires action to be taken to achieve or maintain compliance with Storm Water Requirements, and give location information.

  - If a condition relates to a BMP, you must identify the applicable BMP by type and location and state the action necessary to achieve or maintain compliance with the SWP. If a condition relates to anything other than a BMP, you must briefly describe the condition that requires action and the action necessary to achieve or maintain compliance with the SWP.

- You must record the date the Action Item was first identified in the "Date Item Noted" column.

- The date recorded for a Responsive Action under the "Date Item Noted" column will not change, even if the Responsive Action is carried over to subsequent Responsive Action Logs. When a Responsive Action is restated or carried over to a new Responsive Action Log, you must restate or carry over the date for the Responsive Action as identified on the first Responsive Action Log on which the Responsive Action appeared.

- **The Site Storm Water Compliance Representative or the Storm Water Consultant Designee is responsible for recording the date each Responsive Action is corrected.** If the Site Storm Water Compliance Representative or the Storm Water Consultant Designee actually performed the Responsive Action, he or she should date the Responsive Action Log the same day as the Responsive Action is completed. If a Contractor performs the Responsive Action, the Site Storm Water Compliance Representative or the Storm Water Consultant Designee must confirm that the Responsive Action has been completed and record the date the Responsive Action was completed by the Contractor. The Site Storm Water Compliance Representative or the Storm Water Consultant Designee should record the individual or company that performed the Responsive Action in the "Addressed By" box.

- You must provide a description of the measures used to correct the Action Item in the column "Responsive Action Taken".

**APPENDIX E**

**Division Log/Exception Report**

Division: _____    Division Representative: _____    Signed By: _____

Week of: _____    Print Date: _____    Signature: _____

| | | A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. | R. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | SWP Loc'n and Site Rep. Info. Posted | Permit/ NOI on-site | Contact Info | ** Gov'nment Inspection | Last Inspection Properly Signed | ** Pollution Discharge | ** Clean Off-Site Roads | Entrance/ Exit Controls working properly | Disturbed Areas Stabilized | Stockpiles Stabilized | BMPs Working Properly | Washouts Working | Hazardous Materials Managed | Trash and Debris Managed | Portable Toilets Properly Located | Updated SWP Map | Accel'd Erosion | Other Issues |
| Site Name - Inspection Area | DATE | | | | | | | | | | | | | | | | | | |

SWPPP Form No. 5  |  Page 1 of 2  |  Rev. Date 4/20/2012

**Division Log/Exception Report**

Division: _____    Division Representative: _____    Signed By: _____

Week of: _____    Print Date: _____    Signature: _____

| Site Name - Inspection Area | Ref No | Details | Date Item Noted | Exception Date | Corrected Date | Days After Exception | Corrected Per Permit | Permit Due Date | Acknowledged |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

By submitting this Log, I acknowledge that I have contacted the Storm Water Compliance Representative(s) to discuss the Action Items listed on this Log, and the Compliance Representative(s) and I have agreed on methods to ensure the timely correction of all items.

SWPPP Form No. 5    Page 2 of 2    Rev. Date 4/20/2012

Weekly National **Log/Exception Report**

National Representative: _____     Signed By: _____

Week of: _____     Print Date: _____     Signature: _____

| Site Name - Inspection Area | DATE | A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. | R. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | SWP Loc'n and Site Rep. Info. Posted | Permit/ NOI on-site | Contact Info | ** Gov'nment Inspection | Last Inspection Properly Signed | ** Pollution Discharge | ** Clean Off-Site Roads | Entrance/ Exit Controls working properly | Disturbed Areas Stabilized | Stockpiles Stabilized | BMPs Working Properly | Washouts Working | Hazardous Materials Managed | Trash and Debris Managed | Portable Toilets Properly Located | Updated SWP Map | Accel'd Erosion | Other Issues |
| | | | | | | | | | | | | | | | | | | | |

SWPPP Form No. 6          Page 1 of 2          Rev. Date 4/20/2012

Weekly National **Log/Exception Report**

National Representative: _____    Signed By: _____

Week of: _____    Print Date: _____    Signature: _____

| Site Name - Inspection Area | Ref No | Details | Date Item Noted | Exception Date | Corrected Date | Days After Exception | Corrected Per Permit | Permit Due Date | Acknowledged |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

Comments:

| Site Name - Inspection Area | Ref No | Details | Date Item Noted | Exception Date | Corrected Date | Days After Exception | Corrected Per Permit | Permit Due Date | Acknowledged |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

Comments:

By submitting this Log, I acknowledge that I have contacted the Storm Water Compliance Representative(s) to discuss the Action Items listed on this Log, and the Compliance Representative(s) and I have agreed on methods to ensure the timely correction of all items.

SWPPP Form No. 6                    Page 2 of 2                    Rev. Date 4/20/2012

**APPENDIX F**

## **Quarterly Compliance Inspection**

Site Name: _____     Inspection Area: _____

Division: _____     Inspection Date: _____     Inspector: _____

Permits: _____

Land Parcels: _____

Quarterly Review for Period: _____ to _____

Division Storm Water
Compliance Representative: _____

Site Storm Water
Compliance Representatives: _____

_____

Inspection Type (check one):           ☐ Regular        ☐ Supplemental        ☐ Make-up

Weather Conditions (check one):      ☐ Dry            ☐ Rain              ☐ Snow        ☐ Icy

Rainfall Amount at Time of Inspection:        (in inches)

Rainfall Duration:          (in hours)

| | **General** | **Yes** | **No** | **N/A** |
|---|---|---|---|---|
| A. | Is the Storm Water Plan ("SWP") on site or its location posted? | ☐ | ☐ | |
| A1. | Are the Approved Erosion and Sediment Control Plans available? | ☐ | ☐ | |
| A2. | Is the SWP executed by an Authorized Toll employee? | ☐ | ☐ | |
| A3. | Does the SWP identify potential sources of pollution? | ☐ | ☐ | |
| A4. | Does the SWP identify all operators, and their areas of control? | ☐ | ☐ | ☐ |
| A5. | Does the SWP identify the nature and sequence of earth disturbance activity? | ☐ | ☐ | |
| A6. | If this is the first Quarterly Compliance Inspection conducted for the site, was there a failure to perform or material failure to document the Pre-Construction Inspection Report? | ☐ | ☐ | ☐ |
| B. | If required, are the Applicable Permit and/or NOI on Site? | ☐ | ☐ | |
| B1. | Was the NPDES Permit active at all times during the previous quarter, while there was earth disturbance activity? | ☐ | ☐ | |
| B2. | Did the NPDES Permit cover all areas with active earth disturbance during the previous quarter? | ☐ | ☐ | |
| B3. | If either B1 or B2 are "no", how many days during the previous quarter was there a discharge of pollutants without a permit? | | | |
| C. | Is contact information for the Site Storm Water Compliance Representatives provided on site and is it correct? | ☐ | ☐ | |
| D. | Since the last site inspection, has Toll Brothers received written notice of a federal, state, or local inspection evaluating compliance with the Applicable Permit? | ☐ | ☐ | |
| D1. | If "yes" to D, was (were) a written response(s) submitted to the agency? | ☐ | ☐ | ☐ |
| D2. | If "yes" to D, are copies of the inspection(s) and response(s) filed with the SWP? | ☐ | ☐ | ☐ |
| E. | Was the Site Inspection Report for the last inspection signed by a Site Storm Water Compliance Representative and certified if and as required by the Applicable Permit? | ☐ | ☐ | ☐ |
| E1. | Are all Weekly and Rain-Event (if applicable) Inspections properly printed and filed with the SWP? | ☐ | ☐ | |
| E2. | Are Responsive Action Items performed in a timely manner, as required by the Applicable Permit? | ☐ | ☐ | |
| E3. | Are the Site Storm Water Compliance Representatives trained and certified per Toll Brothers' requirements? | ☐ | ☐ | |
| E4. | Has the Site Storm Water Compliance Representative completed the latest required Toll Brothers' semi-annual training presentation? | ☐ | ☐ | ☐ |

Site Name: _____   Inspection Area: _____

Division: _____   Inspection Date: _____   Inspector: _____

Quarterly Review for Period: _____ to _____

| | Maintenance | Yes | No | N/A |
|---|---|---|---|---|
| F. | Is there an excess of sediment or other pollutants exiting the site? | ☐ | ☐ | |
| F1. | Are the outfall/receiving water discharges free of sediment? | ☐ | ☐ | ☐ |
| F2. | Is there any floatable debris near the discharges? | ☐ | ☐ | ☐ |
| F3. | Do any sediment traps or basins or outlet devices require stabilization or other maintenance? | ☐ | ☐ | ☐ |
| G. | Are off-site roads/gutters free of excessive sediment from the site? | ☐ | ☐ | ☐ |
| H. | Are exit/entrance controls properly located and in working condition, with no maintenance necessary? | ☐ | ☐ | ☐ |
| I. | Are exposed areas stabilized as required? | ☐ | ☐ | ☐ |
| I1. | Is there evidence of accelerated erosion or sedimentation? | ☐ | ☐ | |
| I2. | Are stabilization methods installed in a timely manner (in accordance with the Applicable Permit) after earth disturbance work is completed? | ☐ | ☐ | ☐ |
| I3. | Are dust control measures properly used? | ☐ | ☐ | ☐ |
| I4. | Are steep slopes adequately stabilized? | ☐ | ☐ | ☐ |
| J. | Are stockpiles located and stabilized as required? | ☐ | ☐ | ☐ |
| K. | Are other BMPs properly located, in working condition, and no repairs necessary? | ☐ | ☐ | ☐ |
| K1. | Are existing silt fence and/or perimeter controls properly installed and maintained? | ☐ | ☐ | ☐ |
| K2. | Are check dams properly installed and maintained? | ☐ | ☐ | ☐ |
| K3. | Are erosion control blankets properly installed and maintained? | ☐ | ☐ | ☐ |
| K4. | Are stream crossings properly installed and maintained? | ☐ | ☐ | ☐ |
| K5. | Are on-lot BMPs properly installed and maintained? | ☐ | ☐ | ☐ |
| K6. | Are storm drain inlet protection measures properly installed and maintained? | ☐ | ☐ | ☐ |
| K7. | Are channels, swales, and other open conveyances properly installed, stabilized, and maintained, with no signs of erosion? | ☐ | ☐ | ☐ |
| K8. | Are all pumping and dewatering activities using adequate filtration for discharge water? | ☐ | ☐ | ☐ |
| L. | Are concrete, paint, and stucco washout areas properly located, in working condition, and no maintenance necessary? | ☐ | ☐ | ☐ |
| L1. | Are there signs of improper washout or cleaning of materials around the site, away from the marked washout areas? | ☐ | ☐ | ☐ |
| L2. | Are on-lot mortar/stucco mixers properly managing washout water? | ☐ | ☐ | ☐ |
| M. | Are hazardous materials managed as required? | ☐ | ☐ | ☐ |
| M1. | Is an appropriate Spill Kit available? | ☐ | ☐ | |
| M2. | Are storage areas for construction materials properly protected from rain and storm water runoff? | ☐ | ☐ | ☐ |
| M3. | If refueling is done on-site, are proper measures taken to reduce the potential for a pollution discharge? | ☐ | ☐ | ☐ |
| M4. | Is there any evidence of leaks or spills? | ☐ | ☐ | |
| N. | Are trash, construction debris, and other solid wastes managed as required; and on-site roads/gutters free of excessive sediment? | ☐ | ☐ | ☐ |
| N1. | Do homes under construction have less than one day's worth of construction debris on the lot? | ☐ | ☐ | ☐ |
| N2. | Does the construction area have any or the potential for blowing trash or debris? | ☐ | ☐ | |

Site Name: _____    Inspection Area: _____

Division: _____    Inspection Date: _____    Inspector: _____

Quarterly Review for Period: _____ to _____

| Maintenance | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| O. | Are portable toilets properly located and maintained? | ☐ | ☐ | ☐ |
| P. | Are the site storm water BMPs and the SWP consistent with each other? | ☐ | ☐ | ☐ |
| P1. | Were the SWP or Erosion and Sediment Control Plans updated regularly (if applicable) to reflect construction conditions? | ☐ | ☐ | ☐ |
| Q. | Are there ruts, gullies, or other signs of accelerated erosion? | ☐ | ☐ | ☐ |
| R. | Are there any other compliance issues, inadequate BMPs, additional BMPs, or improvements this Site should address? | ☐ | ☐ | ☐ |
| R1. | Does the Site have any recurring compliance issues? | ☐ | ☐ | |

| Observations and Comments by Inspector |
|---|
| |

| Observations and Comments by Division Storm Water Compliance Representative |
|---|
| **(Based on review of Weekly Division Logs for the entire Quarter, and the Quarterly Compliance Inspection findings)** |
| |

| Responsive Action Log | | | | | |
|---|---|---|---|---|---|
| **Unaddressed Action Items from Previous Inspections** | | | | | |
| Reference Number | Action Item and Location | Date Item Noted | Date Corrected | Addressed By | Responsive Action Taken |
| | | | | | |
| | | | | | |
| **New Action Items** | | | | | |
| | | | | | |
| | | | | | |

(Certification per Applicable Permit)

_____    _____    _____
Name:                       Signature           Date
Inspector

_____    _____    _____
Name:                       Signature           Date
Division Storm Water Compliance Representative

SWPPP Form No. 7                    - 3 -                    Rev. Date: 3/23/2012

## Quarterly Compliance Review

Site Name: _____    Inspection Area: _____

Division: _____    Inspection Date: _____    Inspector: _____

Permits: _____

Land Parcels: _____

Quarterly Review for Period: _____ to _____

Division Storm Water
Compliance Representative: _____

Site Storm Water
Compliance Representatives: _____

_____

Inspection Type (check one):        ☐ Regular        ☐ Supplemental        ☐ Make-up

The following Action Items were observed by the Inspector during the Quarterly Compliance Inspection:

| General |
|---|
|  |

| Maintenance |
|---|
|  |

| Observations and Comments by Inspector |
|---|
|  |

| Observations and Comments by Division Storm Water Compliance Representative |
|---|
| (Based on review of Weekly Division Logs for the entire Quarter, and the Quarterly Compliance Inspection findings) |
|  |

1.  Site Inspections:

    Regular Inspections required in quarter _____ + Rain-Event Inspections required in quarter _____

    Total number of Inspections required in quarter (Regular + Rain-Event):        _____

    Total number of missed or undocumented Site Inspections:        _____

    Percentage Compliance:        _____

    Total number of times a SWP was not available (or its location was not posted) during a Site Inspection:

    _____

    Percentage Compliance:        _____

2.  Responsive Actions:

    Total number of Responsive Actions identified during quarter:        _____

    Total number of Responsive Actions not addressed within the time allowed by the Applicable Permit:

    _____

    Percentage Compliance:        _____

Site Name: _____    Inspection Area: _____

Division: _____    Inspection Date: _____    Inspector: _____

Quarterly Review for Period:    ____ to ____

Reviewed together and acknowledged by:

_____    _____    _____
Name:                                Signature             Date
Division Storm Water Compliance Representative

_____    _____    _____
Name:                                Signature             Date
Primary Site Storm Water Compliance Representative

_____    _____    _____
Name:                                Signature             Date
Secondary Site Storm Water Compliance Representative

**APPENDIX G**

**Division Wide Summary Report**

**Division Storm Water Compliance Representative:**

**Division Name:** _____

**Quarter:** _____ **to** _____

| Site Name | How many days of discharge of pollutants from the Site to waters of the U.S. occurred during the quarter covered by this Division Wide Summary Report and prior to obtaining coverage under an Applicable Permit? | Failure to perform or document Pre-Construction Inspection and Review | Failure to perform or, if performed, a material failure to document a regular or rain event Site Inspection | | | Failure to perform, or if performed, a material failure to document a Quarterly Compliance Inspection or Review for the Site | | | | | Failure to perform, or if performed, a material failure to document a Make-up Quarterly Compliance Inspection or Review | | Failure to have the Site Storm Water Compliance Representatives trained and certified at the time of a Quarterly Inspection | Failure to have SWP available or its location posted at the time of a regular Site Inspection | | | Failure to complete a Responsive Action within timeframe required by the Applicable Permit or, if completed, failure to record the information | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Number Required Site Inspections | Number Missed Site Inspections | Percent Missed Site Inspections | Required Regular Quarterly Compliance Inspections | Required Supplemental Quarterly Compliance Inspections | Required Quarterly Reviews | Missed Quarterly Compliance Inspections | Missed Quarterly Reviews | Number Required Make-up Quarterly Compliance Inspections and Reviews | Number Missed Make-up Quarterly Compliance Inspections or Reviews | | Number of Regular Site Inspections | Number of Failures to have SWP at the Site | Percent Non-Compliance | Number of Responsive Actions Noted | Number Responsive Actions Not Completed / Recorded Within Required Timeframe | Percent Non-Compliance |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | Total Required Site Inspections | Total Missed Site Inspections | Percent Missed Site Inspections | Total Required Regular Quarterly Compliance Inspections | Total Required Supplemental Quarterly Compliance Inspections | Total Required Quarterly Reviews | Total Missed Quarterly Compliance Inspections | Total Missed Quarterly Reviews | Total Required Make-up Quarterly Compliance Inspections and Reviews | Total Missed Make-up Quarterly Compliance Inspections or Reviews | | Total Regular Site Inspections | Total Failures to have SWP at the Site | Percent Non-Compliance | Total Responsive Actions Noted | Total Responsive Actions Not Completed / Recorded Within Required Timeframe | Percent Non-Compliance |
| Total per category | | | | | | | | | | | | | | | | | | |

**Once completed, this form is to be sent to the following: (1) all Site and Division Storm Water Compliance Representatives within the Division that is the subject of this Form; (2) the Division President; and (3) the National Storm Water Compliance Representative.**

| Total Required Weekly Division Logs | Total Missed Weekly Division Logs |
|---|---|
| | |

| Total Required Quarterly Compliance Inspections and Reviews | Total Missed Quarterly Compliance Inspections or Reviews | Percent Missed Quarterly Compliance Inspections or Reviews |
|---|---|---|
| | | |

Signature: _____

Name: _____

Date: _____

SWPPP Form No. 9

Rev. Date: 3/28/2012

# APPENDIX H

# National Compliance Summary Report

## I. Overview

[PROVIDE A BRIEF AND GENERAL DISCUSSION OF THE DATA PRESENTED IN THIS REPORT.]

## II. Information for Categories of Self-Reported Stipulated Penalties

_____ Number of days of discharge of pollutants from a Site to a water of the United States prior to obtaining coverage under an Applicable Permit

| Name of Site | State | # of days |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

_____ Number of failures to perform, or if performed, a material failure to document a Pre-Construction Inspection and Review.

_____ Total number required Site Inspections.

_____ Total number missed Site Inspections.

_____ Percentage failure to perform or, if performed, a material failure to document a required Site Inspection.

_____ Total number of required Regular Quarterly Compliance Inspections.

_____ Total number of required Supplemental Quarterly Compliance Inspections.

_____ Total number of required Regular Quarterly Compliance Reviews.

_____ Total number of required Supplemental Quarterly Compliance Reviews.

_____ Number of failures to perform or, if performed, a material failure to document a required Regular Quarterly Compliance Inspection.

_____ Number of failures to perform or, if performed, a material failure to document a required Supplemental Quarterly Compliance Inspection.

_____ Number of failures to perform or, if performed, a material failure to document a required Regular Quarterly Compliance Review.

_____ Number of failures to perform or, if performed, a material failure to document a required Supplemental Quarterly Compliance Review.

_____ Total number of required Quarterly Compliance Inspections and Reviews.

_____ Total number of failures to perform or, if performed, a material failure to document a required Quarterly Compliance Inspection or Review.

_____ Percentage failure to perform or, if performed, a material failure to document a required Quarterly Compliance Inspection or Review.

_____ Total number of required make-up Quarterly Compliance Inspections and Reviews.

_____ Number of failures to perform or, if performed, a material failure to document a required make-up Quarterly Compliance Inspection or Review.

_____ Number of Division Wide Compliance Summary Reports prepared 1 to 7 days after deadline.

_____ Number of Division Wide Compliance Summary Reports prepared 8 to 30 days after deadline.

_____ Number of Division Wide Compliance Summary Reports prepared 31 to 90 days after deadline.

_____ Total number of required Weekly Division Logs.

_____ Number of failures to prepare or, if prepared, a material failure to document a required Weekly Division Log.

_____ Total number of required Weekly National Logs.

_____ Number of failures to prepare or, if prepared, a material failure to document a required Weekly National Log.

_____    Number of failures to have a Storm Water Trained Site Storm Water Compliance Representative at the time of a Quarterly Compliance Inspection.

_____    Number of failures to have a Site Storm Water Compliance Representative trained under the semi-annual training requirement.

_____    Number of failures to have a Division Storm Water Compliance Representative trained under the semi-annual training requirement.

## III. Responsive Actions/SWP on Site

### A. Responsive Actions

_____    Total number of required Responsive Actions.

_____    Number of failures to complete Responsive Action within the time period required by the Applicable Permit or, if completed, a material failure to record the information.

_____    Percentage failure to complete Responsive Action within the time period required by the Applicable Permit or, if completed, a material failure to record the information.

### B. SWP on Site

_____    Percentage failure to have, at the time of a regular Site Inspection, the SWP on site or its location posted.

## IV. Storm Water Training Program

[WRITTEN EVALUATION OF TOLL BROTHERS' STORM WATER TRAINING PROGRAM INCLUDING A DESCRIPTION OF ANY SIGNIFICANT UPDATES, AND A DESCRIPTION, WHEN APPLICABLE, OF THE SEMI-ANNUAL TRAINING REQUIRED BY PARAGRAPH 18.a.v OF THE CONSENT DECREE.]

[LIST OF THE SITES AND LOCATIONS (COUNTY AND STATE) VISITED DURING EACH QUARTER PURSUANT TO PARAGRAPH 15.i IN ORDER TO DEVELOP THE SEMI-ANNUAL TRAINING.]

**V. Signature and Certification**

I hereby certify that the foregoing information was prepared under my direction or supervision. I certify that the responses are, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

_____    _____    _____
By: [Name]                 Signature                      Date
National Storm Water
Compliance Representative


**VI. Distribution**
Once completed, this form must be sent to the following:
      (1) The President, CEO or COO of Toll Brothers, Inc.;
      (2) All Division Presidents;
      (3) All Division Storm Water Compliance Representatives;
      (4) The Federal Plaintiff, as provided in Paragraphs 17, 27, and 64 of the Consent Decree; and
      (5) The State of Maryland and the Commonwealth of Virginia, as provided in Paragraphs 17 and 64 of the Consent Decree.

**APPENDIX I**

# STORM WATER TRAINING PROGRAM
# SYLLABUS

Introduction
    Introduction to TBI Stormwater Compliance Program
    Compliance Policy & Consent Decree
    The Erosion and Sedimentation Process
Before the Regulations
    Brief History of Environmental Issues
Clean Water Act
    Status of Nation's Waters
    History of NPDES
    Overview of current NPDES Program
What's Next
    ELGs/TMDLs
Types of Fines
    Recaps federal, state, and local fines
    Stipulated Penalties
        Self-Reported Violations
        Non-Self-Reported Violations
Compliance
    Seven steps to compliance
    Outline of compliance measures
    Step 1 – Permits
        Differences between federal, state, and local permits
        Permit Requirements
        Who needs a permit?
        Completing the NOI and other filing requirements
        File a Proper NOI
        Pre-Construction Inspection and Review
    Step 2 – Storm Water Plans and Records
        Details of SWP Contents
    Step 3 – Recordkeeping
        Land Disturbance Records
        Self Inspections
            Site Inspection Report
                Action Items
                Responsive Actions and Log
            Rain-Event Site Inspection Report
            Weekly Division Log
            Weekly National Log
            Quarterly Compliance Inspection
            Quarterly Compliance Review
            Division-Wide Compliance Summary Report
            National Compliance Summary
        Maintenance
            Correcting Action Items
        Updating Plans and Records
    Step 4 – Posted Notice
    Step 5 – Training
        Toll Personnel

Storm Water Consultants
Contractor Orientation
Step 6 – Clean Construction Site
Step 7 – Termination
Final Stabilization
Five Deadly Sins
DS 1 – Dirt in the street
DS 2 – Blowing Trash
DS 3 – Washout Waters
DS 4 – Leaks and Spills
DS 5 – Damaged BMPs
Government Inspection
Before the Inspection
During the Inspection
Post Inspection
Contractors
Contractor Obligations
Typical Costs
Resources
Things to do differently tomorrow
Lessons Learned
BMPs
Uses and installation
Pollutants and Discharges
Examples of acceptable and unacceptable BMP installation and maintenance

**APPENDIX J**

# STORM WATER TRAINING PROGRAM
# SYLLABUS

Introduction
    Introduction to TBI Stormwater Compliance Program
    Compliance Policy & Consent Decree
    The Erosion and Sedimentation Process
Before the Regulations
    Brief History of Environmental Issues
Clean Water Act
    Status of Nation's Waters
    History of NPDES
    Overview of current NPDES Program
What's Next
    ELGs/TMDLs
Types of Fines
    Recaps federal, state, and local fines
    Stipulated Penalties
        Self-Reported Violations
        Non-Self-Reported Violations
Compliance
    Seven steps to compliance
    Outline of compliance measures
    Step 1 – Permits
        Differences between federal, state, and local permits
        Permit Requirements
        Who needs a permit?
        Completing the NOI and other filing requirements
        File a Proper NOI
        Pre-Construction Inspection and Review
    Step 2 – Storm Water Plans and Records
        Details of SWP Contents
    Step 3 – Recordkeeping
        Land Disturbance Records
        Self Inspections
            Site Inspection Report
                Action Items
                Responsive Actions and Log
            Rain-Event Site Inspection Report
            Weekly Division Log
            Weekly National Log
            Quarterly Compliance Inspection
            Quarterly Compliance Review
            Division-Wide Compliance Summary Report
            National Compliance Summary
        Maintenance
            Correcting Action Items
        Updating Plans and Records
    Step 4 – Posted Notice
    Step 5 – Training
        Toll Personnel

Storm Water Consultants
Contractor Orientation
Step 6 – Clean Construction Site
Step 7 – Termination
Final Stabilization
Five Deadly Sins
DS 1 – Dirt in the street
DS 2 – Blowing Trash
DS 3 – Washout Waters
DS 4 – Leaks and Spills
DS 5 – Damaged BMPs
Government Inspection
Before the Inspection
During the Inspection
Post Inspection
Contractors
Contractor Obligations
Typical Costs
Resources
Things to do differently tomorrow
Lessons Learned
BMPs
Uses and installation
Pollutants and Discharges
Examples of acceptable and unacceptable BMP installation and maintenance

**APPENDIX K**

# NPDES Training Exam Questions

*Pool of questions for Exam*
*25 questions – 70% to pass*

1. To fully comply with the storm water requirements, we must comply with:

    A. Federal and State requirements for storm water
    B. City, County, and State requirements for storm water
    C. Federal, State, and Local requirements for storm water
    D. Federal, Regional, and State requirements for storm water

2. The maximum federal civil penalty for a Clean Water Act permit violation can be:

    A. $15,000 total
    B. $37,500/day
    C. $37,500 total
    D. None

3. Under the federal rules, in most circumstances, what is the total area of disturbance you can have before you need a storm water permit?

    A. Less than 5,000 square feet
    B. Less than 1 acre
    C. Less than 5 acres
    D. Less than 10 acres

4. Notice of Termination (NOT) must be filed:

    A. Within 30 days of permanent site stabilization
    B. When we are no longer in operational control of a Site
    C. Before we cease self inspections
    D. All of the above

5. The Division-Wide Summary Report must be signed by a:

    A. Primary Storm Water Compliance Representative
    B. Secondary Storm Water Compliance Representative
    C. Division Storm Water Compliance Representative
    D. National Storm Water Compliance Representative

6. A Quarterly Compliance Review needs to be completed no later than _____ days following the Quarterly Compliance Inspection?

    A. 5 days
    B. 7 days
    C. 14 days
    D. 30 days

7. A List of Sites and Projects needs to be submitted to the EPA:

   A. Monthly
   B. Quarterly
   C. Semi-annually
   D. Yearly

8. The Division Storm Water Compliance Representatives need to submit a National Compliance Summary Report to the EPA at the end of each year.

   A. True
   B. False

9. The posted signage should have the following document attached:

   A. NOT
   B. NOC
   C. NOI
   D. NOG

10. The job of the Site Storm Water Compliance Representative is to:

   A. Review each inspection report and file it with the SWP
   B. Take prompt corrective action
   C. Confirm that Action Items are properly corrected
   D. All of the above

11. Toll policy dictates that a government inspection must be followed up with corrective actions noted in writing within:

   A. 30 days
   B. 7 days
   C. 8 hours
   D. 72 hours

12. A Storm Water Trained person performing NPDES inspections must understand:

   A. The regulations, the SWP, and the BMPs
   B. Historic regulations and requirements
   C. Threatened and endangered species regulations and requirements
   D. All of the above

13. Circle all of the statements below that are true of the SWP.

    A. You must have a SWP that addresses land development and vertical construction activities.
    B. The SWP must include all potential sources of pollution at the Site.
    C. The SWP identifies all operators and specifies which areas of the Site the operators have control.
    D. All of the above

14. The SWP will most likely undergo amendments throughout the construction process.

    A. True
    B. False

15. Where is the location of the SWP noted?

    A. NOT
    B. Posted Signage
    C. BMP
    D. None of the above

16. Which of the following statements is not true about a SWP?

    A. There are over 25 required elements
    B. They must identify all Operators
    C. They must be retained for 5 years after the Notice of Termination is filed
    D. They should include all self inspections
    E. All are true

17. Erosion can be caused by:

    A. Rainfall
    B. Wind
    C. Snowmelt
    D. All of the above

18. Sedimentation is the settling out of soil in water as a result of the erosion process.

    A. True
    B. False

19. Which of the following are components of the Storm Water Orientation for Contractors/Consultants?

    A. Signage
    B. Builder's Storm Water Program Information
    C. Master Subcontractor Information
    D. All of the above

20. The Site Storm Water Compliance Representative, or Designee, should not document when Action Items have been corrected.

    A. True
    B. False

21. The allowable time frame for Action Items to be corrected is:

    A. Immediately upon discovery
    B. 7 days upon discovery
    C. 14 days upon discovery
    D. Whatever is noted in the SWP regarding inspections and maintenance

22. Why is it important to address and document Action Items?

    A. Ignoring Action Items can lead to pollutant discharge
    B. Ignoring Action Items can lead to stipulated penalties
    C. Ignoring Action Items can lead to regulatory enforcement action
    D. All of the above

23. Where and when available, the SWP should be kept:

    A. At the Site
    B. At the Division Office
    C. In your vehicle
    D. All of the above

24. Where should inspection reports be kept?

    A. In the Sales Office
    B. SWP Book
    C. In the Superintendent's Truck
    D. With the Division Storm Water Compliance Representative

25. Periodic inspection of the onsite BMPs:

    A. Are required in certain states but not in others
    B. Are required in every state until a Notice of Termination is filed
    C. Are optional but recommended to keep local agencies happy
    D. Do not need to be written down if everything is in compliance

26. Which is not true about Action Items?

    A. An Action Item is a condition that requires action to be taken to achieve or maintain compliance with Storm Water Requirements.
    B. Each Action Item must have a corresponding Responsive Action.
    C. Action Items should only be recorded once.
    D. Action Items should be recorded more than once, if the items relate to more than one question on the Site Inspection Report.

27. If last week's Responsive Action Log noted that your concrete washout area needed to be cleaned out and you did it, but it needs to be cleaned out again per this week's report, you should:

   A. Let the previous Action Item remain open since it needs to be cleaned out again
   B. Wait until the washout is really full then take action
   C. Ignore the finding
   D. Demonstrate to the inspector that the washout was corrected, close out the old Action Item, and issue a new Action Item.

28. What dos the acronym BMP represent?

   A. Broad Measure Prevention
   B. Best Management Prevention
   C. Best Measure Prevention
   D. Best Management Practices

29. BMPs may be:

   A. Structural and Permanent
   B. Structural and Temporary
   C. Non-Structural
   D. All of the above

30. Identify the primary type of erosion control from the listing below that addresses a potential problem at its source.

   A. Inlet Protection
   B. Silt Fencing
   C. Vegetative Stabilization
   D. Street Sweeping

31. Which of the following is not a correct statement regarding diversions?

   A. Devices can include swales, berms, barriers, or flexible pipe
   B. Diversions are used to divert clean water to a BMP like a sediment trap
   C. Diversions are used to divert dirty water to a treatment BMP
   D. All are correct

32. Which one of the following statements about sediment barriers is not true?

   A. Silt fence should be selected based on the steepness and length of the uphill slope
   B. Sediment barriers should discharge onto stabilized ground
   C. Silt fence should be maintained when the sediment reaches ½ the height of the fence
   D. Installing two parallel silt fences doubles the allowable slope length of the sediment barrier
   E. Low points in sediment barriers should be controlled with a rock filter

33. If a storm sewer discharges into a sediment basin, then inlet filters or filtering pump discharges is not required.

    A. True
    B. False

34. Which of the following is a true statement regarding erosion control blankets?

    A. They are all pretty much the same, so make a selection based on price and availability
    B. They are available in a wide variety; always select a "national brand" like Mirafi
    C. They are not required for slopes flatter than 1:1
    D. They are rated for the ground slope
    E. They are all biodegradable

35. Which of the following is not required for maintenance and refueling equipment onsite?

    A. Fuel should only be stored in areas designated on the SWP
    B. A tarp should be put down if oil, hydraulic fluid or anti-freeze must be changed onsite
    C. Must have secondary containment around a fuel storage tank
    D. SWP must be modified after a spill
    E. All are required

36. Which of the following is not true about flocculents?

    A. They increase the effectiveness of a sediment basin or trap
    B. They are a fairly new technology
    C. They could cause a fish kill downstream
    D. They are fairly expensive

37. Which of the following is not true about mulch?

    A. Use hay, not straw
    B. Should be spread at the rate of 2 tons/acre
    C. Absorbs the impact of raindrops preventing erosion
    D. Allows germination to occur longer going into cold weather

38. Concrete Waste, Paint, Pesticides, Sanitary Waste, Petroleum and Oil need to be contained after roads are paved and inlets are installed.

    A. True
    B. False

39. A Subcontractor is allowed to wash out concrete in a storm drain inlet if there is inlet protection installed.

    A. True
    B. False

40. Portable toilets and concrete washout areas should be located at least how far away from inlets, swales, surface waters, or steep slopes?

    A. 100'
    B. 25'
    C. 50'
    D. 10'

**APPENDIX L**

# **Listed Contractors**

1) Earthmoving/Earth Disturbance/Excavation Contractors
2) Tree and Vegetation Clearing Contractors
3) Drilling and Boring Contractors
4) De-Watering Contractors
5) Erosion Prevention and Sediment Control Contractors
6) Storm Drain Installation Contractors
7) Water & Sewer Installation Contractors
8) Paving Contractors (including curb and gutter installation)
9) Foundation/Foundation Excavation Contractors
10) Non-Regulated Utility Contractors
11) Masonry Contractors
12) Interior and Exterior Painting and Staining Contractors
13) Stucco Contractors
14) Landscape Installation Contractors
15) Framing/Siding/Insulation Contractors
16) Roofing Contractors
17) Drywall Contractors
18) Sanitary Facility Contractors

# APPENDIX M

# <u>List of Contractor Dos & Don'ts</u>

## <u>DO:</u>

- **DO** go to the Site Storm Water Compliance Representative with any questions regarding storm water pollution prevention or this list.

- **DO** place all trash and debris in the receptacles provided.

- **DO** use designated washout areas for cleaning equipment (*e.g.,* concrete trucks must use the designated concrete washout area).

- **DO** report any spills of petroleum or other chemicals to the Site Storm Water Compliance Representative or other Toll Brothers personnel.

- **DO** immediately comply with any instructions given by the Site Storm Water Compliance Representative or other Toll Brothers personnel.

## <u>DON'T:</u>

- **DON'T** allow any solvents, chemicals, or rinse liquids to drain into a street, storm drain, a creek, waterway, or other water body.

- **DON'T** disable, damage, or interfere with any silt fence or similar erosion control measure.
    - o For example, **DON'T** run over silt fence or straw wattle or forget to replace any silt fence or straw wattle you temporarily relocate.

- **DON'T** disable, damage, or interfere with any inlet controls.
    - o For example, **DON'T** remove inlet controls (unless an action is needed to prevent flooding) or place dirt or debris in or adjacent to inlet controls.

- **DON'T** disable, damage, or interfere with any storm water pollution prevention control measures at construction entrances/exits.
    - o For example, **DON'T** evade stone construction entrances/exits.

- **DON'T** disable, damage, drive over, or interfere with any geotextile, matting, or mulch.

- **DON'T** disable, damage, or interfere with any other storm water pollution prevention control measures.

Remember: The failure to comply with storm water requirements at this community is a breach of your contractual obligations and can result in fines, penalties, or termination.

# APPENDIX N

| Site Marketing Name | Street Address (within Site) | City | County | State | Status |
|---|---|---|---|---|---|
| Arborleda | 3453 E Jaeger Circle | Mesa | Maricopa | AZ | Inactive |
| Aviano at Desert Ridge | 3911 E. Williams Drive | Phoenix | Maricopa | AZ | Active |
| Litchfield Park | 14566 Village Parkway | Litchfield Park | Maricopa | AZ | Active |
| Montevista | 5301 Hallihan Drive | Cave Creek | Maricopa | AZ | Active |
| Power Ranch | 4565 E. Desperado Rd. | Gilbert | Maricopa | AZ | Inactive |
| Residences on Main | 6803 E Main Street | Scottsdale | Maricopa | AZ | Inactive |
| Saguaro Estates | 6800 E Blue Sky Drive | Scottsdale | Maricopa | AZ | Inactive |
| Sierra Norte | 9698 E. Vantage Point Road | Scottsdale | Maricopa | AZ | Inactive |
| Sonoran Foothills | 31804 N 19th Avenue | Phoenix | Maricopa | AZ | Inactive |
| Toll Brothers at Litchfield Park | 780 W Verbena Lane | Litchfield Park | Maricopa | AZ | Inactive |
| Treviso | 10798 E. Cetona Court | Scottsdale | Maricopa | AZ | Active |
| Windgate Ranch | 9803 E Edgestone Drive | Scottsdale | Maricopa | AZ | Active |
| Madera Highlands | 1069 E Madera Estates Lane | Sahuarita | Pima | AZ | Inactive |
| Toll Brothers at Dove Mountain | 5709 W Silent Wash Place | Marana | Pima | AZ | Inactive |
| Las Colinas | 4347 S Salvia Drive | Apache Junction | Pinal | AZ | Inactive |
| Carrick Village at Stonebrae | 11 Arundel Drive | Castro Valley | Alameda | CA | Active |
| Dublin Ranch | 3645 Whitworth | Dublin | Alameda | CA | Active |
| Sorrento at Dublin Ranch | 3536 Palermo Way | Dublin | Alameda | CA | Active |
| Norris Canyon Estates | 2221 Ashbourne Drive | Castro Valley | Contra Costa | CA | Active |
| Seacliff at Port Richmond | 103 Seacliff Court | Pt. Richmond | Contra Costa | CA | Inactive |
| Pinnacle at Serrano | 2616 Orsay Way | El Dorado Hills | El Dorado | CA | Inactive |
| Villa Lago at Promontory | 2657 Giorno Way | El Dorado Hills | El Dorado | CA | Inactive |
| Indian Oaks at Chatsworth | 22498 La Quilla Drive | Chatsworth | Los Angeles | CA | Inactive |
| Vistas at Indian Oaks | 21948 Cortina Place | Chatsworth | Los Angeles | CA | Active |
| Vista Del Verde | 18600 Seabiscuit Run | Yorba Linda | Orange | CA | Active |
| Corona View | 1073 Young Circle | Corona | Riverside | CA | Active |
| Mountain View Country Club | 80375 Pomelo | La Quinta | Riverside | CA | Inactive |
| PGA West | 81250 Legends Way | La Quinta | Riverside | CA | Inactive |
| Enclave II By Toll Bros | 5427 Trabuco Court | Rancho Cucamonga | San Bernadino | CA | Inactive |
| Heights at Haven View | 4965 Roan Court | Rancho Cucamonga | San Bernardino | CA | Active |
| Highland Estates at Oak Creek | 30665 McLean Street | Highland | San Bernardino | CA | Inactive |
| Signature Collection At The Crosby | 16693 Riding High Way | San Diego | San Diego | CA | Inactive |
| Britton Place at Sunnyvale | 251 Ficus Terrace | Sunnyvale | Santa Clara | CA | Inactive |
| Citypark at Sunnyvale | 504 Solomon Terrace | Sunnyvale | Santa Clara | CA | Inactive |
| Courtyards at Lundy | 1262 Avenida Benito Court | San Jose | Santa Clara | CA | Inactive |
| Siena at Saratoga | 5090 Graves Ave | San Jose | Santa Clara | CA | Inactive |
| Verona | 414 Tasman Drive | Sunnyvale | Santa Clara | CA | Inactive |
| Villas at Lundy | 1287 Marcello Drive | San Jose | Santa Clara | CA | Inactive |
| Willow Glen Place | 2800 Paseo Lane | San Jose | Santa Clara | CA | Inactive |
| Camarillo Pinnacle | 5491 Castillo De Rosas | Camarillo | Ventura | CA | Inactive |
| Moorpark Country Club | 7158 Trevino Drive | Moorpark | Ventura | CA | Active |
| Beacon Point | 26418 E. Walker Drive | Aurora | Arapahoe | CO | Inactive |
| Vistas at Tallyn's Reach | 7355 South Jackson Gap Way | Aurora | Arapahoe | CO | Active |
| Enclave at Broadlands | 14051 Pinehurst Circle | Broomfield | Broomfield | CO | Inactive |
| Bluffmont Greens at Ridgegate | 10171 Bluffmont Drive | Lone Tree | Douglas | CO | Inactive |
| Estates at Pine Bluffs | 19984 East Crooked Pine Cir. | Parker | Douglas | CO | Active |
| Summit at Castle Pines | 6173 Massive Peak Circle | Castle Rock | Douglas | CO | Inactive |
| Bluffmont Heights at Ridgegate | 10434 Rivington Court | Lone Tree | Lone Tree | CO | Inactive |
| Seven Hills Estates | 15 Seven Hills Crossing | East Hampton | East Hampton | CT | Inactive |
| Bethel Meadows | 7 Hidden Brook Trail | Bethel | Fairfield | CT | Active |
| Regency at Newtown | 2 Watkins Drive | Sandy Hook | Fairfield | CT | Active |
| Regency at Ridgefield | 638 Danbury Road | Ridgefield | Fairfield | CT | Inactive |
| The Summit at Bethel | 10 Great Hill Drive | Bethel | Fairfield | CT | Active |
| Vistas at White Hills | 56 Sachem Drive | Shelton | Fairfield | CT | Inactive |
| Ellington Estates | 3 Oak Hill Farms Road | Ellington | Hartford | CT | Inactive |
| Glastonbury Heights | 9 Paxton Way | Glastonbury | Hartford | CT | Inactive |
| High Meadow Estates at Glastonbury | 16 Shelburne Way | Glastonbury | Hartford | CT | Inactive |
| Newington Ridge | 9 Bogart Lane | Newington | Hartford | CT | Inactive |
| Regency at Berlin | 20 Bannan Lane | Berlin | Hartford | CT | Active |
| Regency at Bloomfield | 10 Vista Way | Bloomfield | Hartford | CT | Inactive |
| Regency at Prospect | 7 White Oak Drive | Prospect | New Haven | CT | Active |
| Brandywine Hunt | 105 Trotter Drive West | Wilmington | New Castle | DE | Inactive |
| Greenville Overlook | 510 Chariot Court | Wilmington | New Castle | DE | Active |
| Hockessin Mews | 144 Farm Meadows Lane | Hockessin | New Castle | DE | Inactive |
| Hockesson Oaks | 1 Celestial Way | Hockessin | New Castle | DE | Inactive |
| Red Lion Chase / Woodlands at St. Georges | 212 Audubon Drive | Bear | New Castle | DE | Active |
| Reserve at Hockessin Chase | 101 St. Claire Drive | Hockessin | New Castle | DE | Inactive |
| Bayside at Bethany | 38376 Old Mill Way | Ocean View | Sussex | DE | Inactive |
| Bethany Lakes | 10 May Drive | Bethany Beach | Sussex | DE | Inactive |
| White Creek at Bethany | 30944 Sea Breeze Lane | Ocean View | Sussex | DE | Active |
| Fairway Lakes at Viera | 3030 Rufuge Court | Viera | Brevard | FL | Inactive |
| Parkland Golf and Country Club | 9639 Ginger Court | Parkland | Broward | FL | Active |
| Eagle Harbor | 2307 Country Side Drive | Orange Park | Clay | FL | Inactive |
| Eagle Landing | 4008 Eagle Landing Pkwy | Orange Park | Clay | FL | Inactive |
| Aviano at Naples | 12811 Carrington Circle | Naples | Collier | FL | Inactive |
| Firano at Naples | 7852 Martino Circle | Bonita Springs | Collier | FL | Active |

20120504

| Site Marketing Name | Street Address (within Site) | City | County | State | Status |
|---|---|---|---|---|---|
| Tuscany | 510 Christina Drive | St. Augustine | Duval | FL | Inactive |
| Grande Haven | Colbert Lane and Waterside Parkway | Palm Coast | Flager | FL | Inactive |
| Estates at Harbour Isles | 205 Royal Bonnet Drive | Apollo Beach | Hillsborough | FL | Inactive |
| Belle Lago Estates | 8702 Largo Mar Drive | Ft. Myers | Lee | FL | Active |
| Bonita Bay | 6800 Mossy Glen Dr. | Ft. Myers | Lee | FL | Inactive |
| Enclave at Palmiera | 14071 Giustino Way | Bonita Springs | Lee | FL | Inactive |
| Reserve at Estero | 19731 Villa Rosa Loop | Ft. Myers | Lee | FL | Active |
| Villa del Este | 14117 Lavante Court | Bonita Springs | Lee | FL | Inactive |
| Bay Isle | 14435 Hampshire Bay Circle | Winter Garden | Orange | FL | Inactive |
| Meadow Woods | 1944 Cedar Lake Drive | Orlando | Orange | FL | Inactive |
| Timber Springs | 601 Spring Oak Circle | Orlando | Orange | FL | Inactive |
| Villas at Cypress Springs | 2235 Cypress Villas Dr | Orlando | Orange | FL | Inactive |
| Meadowwoods Cove | 1009 Wood Cove | Kissimmee | Osceola | FL | Inactive |
| Azura | 17355 Balaria Street | West Palm Beach | Palm Beach | FL | Active |
| Beach Front at Singer Island | 4600 North Ocean Drive | Singer Island | Palm Beach | FL | Inactive |
| Frenchmens Reserve | 705 Cote Azur Drive | Palm Beach Gardens | Palm Beach | FL | Active |
| Jupiter Country Club | 210 Tresana Blvd | Jupiter | Palm Beach | FL | Active |
| Mizner Country Club | 8903 Oakland Hills Drive | Delray Beach | Palm Beach | FL | Inactive |
| Oceans Edge | 5050 N. Ocean Drive | Singer Island | Palm Beach | FL | Inactive |
| Trieste at Boca Raton | 5705 NE Verde Circle | Boca Raton | Palm Beach | FL | Inactive |
| Wellington View | 760 Edgebrook Lane | West Palm Beach | Palm Beach | FL | Active |
| Lake Juliana Estates | 342 Crescent Ridge Rd | Auburndale | Polk | FL | Active |
| Providence at Drayton Woods | 584 Gunston Ct. | Davenport | Polk | FL | Inactive |
| Astor Farms | 1639 Astor Farms Place | Sanford | Seminole | FL | Inactive |
| Coastal Oaks | 96 Oyster Bay Way | Ponte Vedra | St. Johns | FL | Active |
| Durbin Crossing | 475 North Durbin Parkway | Jacksonville | St. Johns | FL | Inactive |
| Palencia | Longleaf Pine Pkwy and N/S Durbin Pkwy | St. Augustine | St. Johns | FL | Inactive |
| St. Johns Forest | 221 St. Johns Forest Blvd. | Jacksonville | St. Johns | FL | Inactive |
| Tuscany Ridge | 301 Valverde Lane | St. Augustine | St. Johns | FL | Inactive |
| Colony at Greenbriar | 200 Stonewell Drive | Jacksonville | St. Johns | FL | Inactive |
| Estates at Tradition | 11901 SW Aventino Drive | Port St. Lucie | St.Lucie | FL | Inactive |
| Woodstock Knoll | 119 Johnston Farm Lane | Woodstock | Cherokee | GA | Inactive |
| Crossings at Morton Grove | 6337 Hennings Court | Morton Grove | Cook | IL | Active |
| Inverness Ridge | 1005 Ridgeview Drive | Inverness | Cook | IL | Inactive |
| Woods of South Barrington | 40 Glacier Circle | Barrington | Cook | IL | Active |
| Bloomingdale Walk | 152 Paxton Road | Bloomingdale | Du Page | IL | Inactive |
| Bowes Creek Country Club | 3511 Tournament Drive | Elgin | Kane | IL | Active |
| Lake Run Estates | 430 Lake Run Court | North Aurora | Kane | IL | Inactive |
| Churchill Hunt | 5240 Notting Hill Road | Gurnee | Lake | IL | Inactive |
| Hawthorne Woods | 52 Tournament Drive South | Hawthorn Woods | Lake | IL | Active |
| The Glen | 2750 Commons Drive | Glenview | Lake | IL | Active |
| Regency at Assabet Ridge | 50 Crowley Drive | Marlborough | Middlesex | MA | Active |
| North Attleborough Preserve | 46 Ruest Road | North Attleborough | Bristol | MA | Inactive |
| Regency At Methuen | 3 Sherwood Drive | Methuen | Essex | MA | Active |
| Village at Merrimac Greens | 33 Fairways Lane | Methuen | Essex | MA | Inactive |
| Estates at Highland Ridge | 1 Overlook Road | Hopkinton | Middlesex | MA | Inactive |
| Wellesley Estates | 215 Cedar Street | Wellesley | Middlesex | MA | Inactive |
| Estates at Bellingham | 3 Whitehall Way | Bellingham | Norfolk | MA | Inactive |
| Estates at Walpole | 10 Lexington Drive | E. Walpole | Norfolk | MA | Active |
| Toll Brothers At The Pinehills | 3 Saddleback | Plymouth | Plymouth | MA | Active |
| Regency at Bolton | 17 Pondside Drive | Bolton | Worcester | MA | Inactive |
| Arundel Preserve | 7719 Clay Bridge Court | Hanover | Anne Arundel | MD | Active |
| Hunt Valley Chase | 1113 Hunt Creek Lane | Sparks | Baltimore | MD | Inactive |
| Huntingdon Valley Estates | 14821 Hunting Way | Sparks | Baltimore | MD | Inactive |
| Stevenson Estates | 8225 Pumpkin Hill Court | Pikesville | Baltimore | MD | Inactive |
| Estates at Cedarday | 2202 Greencedar Drive | Belair | Harford | MD | Active |
| Harford Glen | 407 Teresa Marie Court | Bel Air | Harford | MD | Inactive |
| Morning Brook Farm | 1805 Morning Brook Drive | Bel Air | Harford | MD | Inactive |
| Tollgate Village | 828 Cider Mill Lane | Bel Air | Harford | MD | Inactive |
| Willowvale Farms | 2342 Willow Vale Drive | Fallston | Harford | MD | Inactive |
| Cattail trace | 3775 Jennings Chapel Road | Woodbine | Howard | MD | Inactive |
| Glenelg Estates | 13908 Ryon Drive | Glenelg | Howard | MD | Active |
| Patuxent Chase | 11502 Fox River Drive | Ellicott City | Howard | MD | Active |
| Pindell Chase | Pindell School Road and Pindell Chase Drive | Clarksville | Howard | MD | Inactive |
| Reserve at Tridelphia | 14509 Edgewoods Way | Glenelg | Howard | MD | Active |
| Tridelphia Crossing | 14211 Meadow Lake Drive | Glenelg | Howard | MD | Inactive |
| Tridelphia Preserve | 14028 Big Branch Drive | Dayton | Howard | MD | Inactive |
| Glen at Hurley Ridge | 21903 Manor Crest Lane | Boyds | Montgomery | MD | Inactive |
| Potomac View | 10600 Rivers Bend Lane | Potomac | Montgomery | MD | Inactive |
| Woodcliff Park Estates | 18605 Black Kettle Drive | Boyds | Montgomery | MD | Inactive |
| Cheltenham Estates | 8100 Kittama Drive | Clinton | Prince Georges | MD | Active |
| Marlboro Ridge | 11313 Marlboro Ridge Road | Upper Marlboro | Prince Georges | MD | Active |
| Bayside at Ocean City | 12135 Landings Blvd | Berlin | Worcester | MD | Active |
| Bluffs at Lakes of Milford | 1432 Hunter's Lake Drive | Milford | Oakland | MI | Inactive |
| Century Oaks | 3950 Grand Oaks Boulevard | Oakland Township | Oakland | MI | Inactive |
| Island Lake at Novi | 26056 Island Lake Drive | Novi | Oakland | MI | Active |

20120504

| Site Marketing Name | Street Address (within Site) | City | County | State | Status |
|---|---|---|---|---|---|
| Lakes at Milford | 3101 Bradford Court | Milford | Oakland | MI | Inactive |
| Oakland Hunt | 3102 Royal Berkshire Lane | Oakland Township | Oakland | MI | Inactive |
| Preserve at Maple Lake | 3702 North Shoreline Drive | Milford | Oakland | MI | Inactive |
| Wynstone Point | 64 Mill House Drive | Oakland Township | Oakland | MI | Inactive |
| Arbor Hills | 3517 Northbrooke Drive | Northville | Washtenaw | MI | Inactive |
| Glennborough | 5322 Betheny Circle | Superior Twp. | Washtenaw | MI | Inactive |
| Saline Estates | 963 Northern Dancer | Northville | Washtenaw | MI | Inactive |
| Walnut Ridge | 2578 Timber Hill Drive | Ann Arbor | Washtenaw | MI | Inactive |
| Northville Hills | 45429 Tournament Drive | Northville | Wayne | MI | Active |
| Steeplechase of Northville | 19017 Heather Ridge Drive | Northville | Wayne | MI | Active |
| Steeplechase of Eagan | 1438 Steeplechase Circle | Eagan | Dakota | MN | Active |
| Lakes at Maple Grove | 12586 84th Place N. | Eagan | Hennepin | MN | Active |
| Spring Lake Estates | 2122 Belmont Ave NW | Maple Grove | Scott | MN | Active |
| Hills at Southpointe | 321 South Bend Drive | Durham | Durham | NC | Active |
| Enclave At Providence | 4232 Greenbriar Hills | Charlotte | Mecklenburg | NC | Active |
| Fairways at Sky Brook | 14341 Salem Ridge Road | Hunterville | Mecklenburg | NC | Inactive |
| Triple Crown Estates | 915 Triple Crown Drive | Chapel Hill | Orange | NC | Inactive |
| Marvin Creek | 511 Briar Patch Terrace | Waxhaw | Union | NC | Active |
| Brier Creek Country Club | 9207 Fawn Lake Drive | Raleigh | Wake | NC | Active |
| Estates at Olde Carpenter | 406 Olde Carpenter Way | Cary | Wake | NC | Inactive |
| Green Level Crossing | 808 Katahdin Way | Cary | Wake | NC | Active |
| Hasentree | 1037 Linenhall Way | Wake Forest | Wake | NC | Active |
| Mills Farm | 7017 Ashley Rose Drive | Cary | Wake | NC | Inactive |
| Oaks at Meadow Ridge | 4801 Fielding Drive | Raleigh | Wake | NC | Active |
| Woodcliffe Lake Estates | 15 Taft Court | Woodcliffe Lake | Bergen | NJ | Inactive |
| Chesterfield Greene | 4 Chilton Drive | Chesterfield | Burlington | NJ | Inactive |
| Chestnut Greene | 1 Thorn Lane | Chesterfield | Burlington | NJ | Inactive |
| 700 Grove | 700 Grove Street | Jersey City | Hudson | NJ | Inactive |
| Harborside Lofts | 1500 Garden Street | Hoboken | Hudson | NJ | Inactive |
| Maxwell House | 1025 Maxwell Lane | Hoboken | Hudson | NJ | Active |
| Alexandria Estates | 3 Balmoral Drive | Pittstown | Hunterdon | NJ | Inactive |
| Lookout Pointe | 52 Albert Road | Clinton | Hunterdon | NJ | Inactive |
| Princeton Junction | 51 Tree Swallow Drive | Princeton | Mercer | NJ | Inactive |
| Riviera at Windsor | 160 Aristotle Way | Cranbury | Mercer | NJ | Inactive |
| Cranbury Brook | 100 Middlesex Blvd | Plainsboro | Middlesex | NJ | Inactive |
| Regency at Monroe | 51 Country Club Drive | Monroe Township | Middlesex | NJ | Active |
| Windhaven | 2 Trotter Court | Monroe | Middlesex | NJ | Inactive |
| Castle Pointe at Marlboro | 1 Witherspoon Way | Marlboro | Monmouth | NJ | Inactive |
| Crossroads at Freehold | 75 Tricentennial Drive | Freehold | Monmouth | NJ | Inactive |
| Dancer Farm | 16 Dancer Lane | Manalapan | Monmouth | NJ | Inactive |
| Eagles Pointe | 601 Buhler Court | Pine Beach | Monmouth | NJ | Inactive |
| Golf Edge Estates | 3 Grant Drive | Cream Ridge | Monmouth | NJ | Inactive |
| Manalapan Preserve | 2 Elkridge Way | Manalapan | Monmouth | NJ | Inactive |
| Manasquan River Crossing | 1 Ethan Drive | Farmingdale | Monmouth | NJ | Inactive |
| Riviera at Freehold | 15 Quincy Court | Freehold | Monmouth | NJ | Inactive |
| Taylors Mill Chase | 1 Rockingham Court | Manalapan | Monmouth | NJ | Inactive |
| Estates at Long Valley | 8 Ridgeline Road | Flanders | Morris | NJ | Active |
| Morris Chase | 1 Greenwich Court | Budd Lake | Morris | NJ | Active |
| Morris Hunt | 2 Sovereign Drive | Flanders | Morris | NJ | Active |
| Regency at Denville | 10 Jade Circle | Denville | Morris | NJ | Inactive |
| Tanners Brook | 4 Carlisle Court | Chester | Morris | NJ | Inactive |
| Wyndham Point | 3 Vista Dive | Flanders | Morris | NJ | Inactive |
| Enclave at Manasquan River | 72 Streambank Drive | Freehold | Ocean | NJ | Inactive |
| Riveria at Westlake | 48 Oakmont Lane | Jackson | Ocean | NJ | Inactive |
| Seabreeze at Lacey | 7 Braemore Court | Forked River | Ocean | NJ | Active |
| Villas at Manahawkin | 2 Crane Court | Manahawkin | Ocean | NJ | Active |
| Ramapo Ridge | 90 Finch Road | Ringwood | Passaic | NJ | Inactive |
| Hillsborough Chase | 6 Frey Road | Hillsborough | Somerset | NJ | Active |
| Preserve at Hillsborough | 3 Boehm Way | Hillsborough | Somerset | NJ | Active |
| Royce Brook Meadows | 4 Todd Street | Hillsborough | Somerset | NJ | Inactive |
| Andover Ridge | 2 Stone Forge Road | Andover | Sussex | NJ | Inactive |
| Briar Crest at Crystal Springs | 84 Briar Court | Hamburg | Sussex | NJ | Inactive |
| Chapel Hill at Sparta | 1 Chapel Hill Court | Sparta | Sussex | NJ | Active |
| High Ridge Estates | 2 High Ridge Lane | Augusta | Sussex | NJ | Active |
| Ridgeview at Sparta | 13 Triple Crown Drive | Sparta | Sussex | NJ | Inactive |
| Rolling Hills Estates | 3 Sterling Drive | Wantage | Sussex | NJ | Inactive |
| Scenic Hills Property | 23 Scenic Hills Drive | Blairstown | Warren | NJ | Inactive |
| Barcelona | 12021 La Palmera Avenue | Las Vegas | Clark | NV | Active |
| Fairway Hills | 11280 Granite Ridge Rd | Las Vegas | Clark | NV | Active |
| Franklin Park | Shaumber Road | Las Vegas | Clark | NV | Active |
| Hidden Canyon Estates | 6248 San Gagano Ave | Las Vegas | Clark | NV | Active |
| Inspirada | 3171 Palazzo Reale Ave | Henderson | Clark | NV | Active |
| Las Lomas | 884 Loma Bonita Pl | Las Vegas | Clark | NV | Inactive |
| Madera at Mountains Edge | 9911 Peak Lookout St. | Las Vegas | Clark | NV | Inactive |
| Madison Grove at Providence | 7419 Olmstead St. | Las Vegas | Clark | NV | Inactive |
| McDonald Highlands | 1479 Foothills Village Dr | Henderson | Clark | NV | Active |

20120504

| Site Marketing Name | Street Address (within Site) | City | County | State | Status |
|---|---|---|---|---|---|
| Mirasol | 10244 Vinces Lake St. | Las Vegas | Clark | NV | Active |
| North Canyon Estates | 5123 Crown Cypress St | Las Vegas | Clark | NV | Inactive |
| Palomar | 12252 Montura Rosa Pl. | Las Vegas | Clark | NV | Inactive |
| Red Rock Reserve | 1986 Alcova Ridge Dr. | Las Vegas | Clark | NV | Inactive |
| Red Rock Retreat | 1944 Orchard Mist St. | Las Vegas | Clark | NV | Inactive |
| Serrano | 732 Chervil Valley Drive | Las Vegas | Clark | NV | Inactive |
| Traccia | 11383 Merado Peak Dr. | Las Vegas | Clark | NV | Active |
| Vita Bella | 33 Via Di Vita | Las Vegas | Clark | NV | Active |
| Damonte Ranch | 2630 Vitoria Court | Reno | Washoe | NV | Active |
| Montelena | 6170 Sierra Mesa | Reno | Washoe | NV | Active |
| Somersett | 2230 Ridge Field Trail | Reno | Washoe | NV | Active |
| Toll Brothers at Arrowcreek | 10336 Via Bianca | Reno | Washoe | NV | Inactive |
| Arlington Hunt | 38 Old Field Road | Poughkeepsie | Dutchess | NY | Inactive |
| Beekman Chase | 62 Heather Drive | Hopewell Junction | Dutchess | NY | Active |
| Hopewell Glen | 45 Fenton Way | Hopewell Junction | Dutchess | NY | Active |
| Hopewell Oaks | 46 Creekside Road | Hopewell Junction | Dutchess | NY | Inactive |
| Old Hopewell Estates | 9 Shamrock Hills Drive | Wappingers Falls | Dutchess | NY | Active |
| Regency at Fishkill | 123 Regency Drive | Fishkill | Dutchess | NY | Active |
| Somerset Crossing | 6 Brigam Lane | Hopewell Junction | Dutchess | NY | Inactive |
| Stonykill View Singles | 68 Blossom Court | Wappingers Falls | Dutchess | NY | Inactive |
| The Hills at LaGrange | 63 Keith Drive | Poughkeepsie | Dutchess | NY | Active |
| Toll Brothers at Four Corners | 4 Walnut Road | Hopewell | Dutchess | NY | Active |
| Van Wyck | 201 Roosevelt Drive | Fishkill | Dutchess | NY | Active |
| North 8th | 49 N. 8th St. | Brooklyn | Kings | NY | Inactive |
| One Ten Third | 108-112 Third Ave. | New York | New York | NY | Inactive |
| 5th Street Lofts | 5-26 47th Road | Long Island City | Queens | NY | Inactive |
| Estates at Half Moon | 68 Stone Crest Drive | Mechanicville | Saratoga | NY | Active |
| Mountain View at Gardiner | 31 Sanford Drive | Gardiner | Ulster | NY | Inactive |
| Cortland Ridge | 6 Chiusa Lane | Cortlandt | Westchester | NY | Inactive |
| Hollow Brook Meadows | 50 Augusta Drive | Cortlandt Manor | Westchester | NY | Inactive |
| Trotters Gate | 5483 Rosalind Boulevard | Powell | Delaware | OH | Inactive |
| Buckingham Forest | 3630 Green Ridge Road | Furlong | Bucks | PA | Inactive |
| Chapmans Corner | 292 Jane Chapman Dr. East | Newtown | Bucks | PA | Active |
| Doylestown Woods | 1 Theodore Way | Furlong | Bucks | PA | Active |
| Estates at Hilltown | 1000 Azlen Lane | Chalfont | Bucks | PA | Active |
| Highlands at Chapmans Corner | 100 Jane Chapman Drive West | Newtown | Bucks | PA | Inactive |
| Linton Hill Chase | 1 Delaney Drive | Newtown | Bucks | PA | Inactive |
| New Britain Walk | 303 Nottingham Place | Chalfont | Bucks | PA | Inactive |
| Newtown Station | 103 Madison Street | Newtown | Bucks | PA | Inactive |
| Newtown Walk | 132 Hillborn Drive | Newtown | Bucks | PA | Active |
| Northampton Hunt | 33 Addis Drive | Churchville | Bucks | PA | Inactive |
| Overlook at Newtown | 148 Durham Road | Newtown | Bucks | PA | Inactive |
| Penn Land Farms | 241 Pennland Farm Dr. | Doylestown | Bucks | PA | Active |
| Plumstead Chase | 4678 Strouse Lane | Doylestown | Bucks | PA | Active |
| Regency at Northampton | 298 Sydney Road | Holland | Bucks | PA | Inactive |
| Reserve at Newtown | 1 Claire Drive | Newtown | Bucks | PA | Inactive |
| Reserve at Upper Makefield | 8 Hayhurst Drive | Newtown | Bucks | PA | Inactive |
| Spring Valley Estates at Buckingham | 2712 Kent Drive | Furlong | Bucks | PA | Active |
| Upper Mountain Estates | 4358 Wentworth Court | New Hope | Bucks | PA | Active |
| Villages at Buckingham | 2443 North Whittmore Street | Jamison | Bucks | PA | Active |
| Byers Station | 2827 Tansey Lane | Chester Springs | Chester | PA | Active |
| Charlestown Meadows | 13 Ashtree La. | Malvern | Chester | PA | Inactive |
| Chestnut Ridge Estates | 1498 Alton Way | Downingtown | Chester | PA | Inactive |
| Estates at Chaddsford | 11 Pin Oak Drive | Chadds Ford | Chester | PA | Active |
| Estates at Ludwig Corners | 100 Marigold Court | Chester Springs | Chester | PA | Inactive |
| Estates at Tattersall | 1602 Tuckaway Trail | West Chester | Chester | PA | Inactive |
| Preserve At Chadds Ford | 9 Pratt Lane | West Chester | Chester | PA | Active |
| Reserve at Chestnut Ridge | 1485 West Stonington Drive | Downingtown | Chester | PA | Inactive |
| Reserve at Eagle | 143 Palsgrove Way | Chester Springs | Chester | PA | Inactive |
| Riverside at Chadds Ford | 201 Winston Lane | West Chester | Chester | PA | Inactive |
| Westtown Chase | 251 Weatherhill Drive | West Chester | Chester | PA | Inactive |
| Whiteland Woods | 243 Torrey Pine Court | West Chester | Chester | PA | Inactive |
| Woodledge At Whitford Hills | 101 Woodledge Lane | Chester Springs | Chester | PA | Inactive |
| Estates at Garnet Valley | 8 Mount Aire Farm Road | West Chester | Delaware | PA | Active |
| Reserve at Garnet Valley | 20 Hudson Way | Boothwyn | Delaware | PA | Inactive |
| Rivieria at Concord | 120 S. Valentine Drive | Boothwyn | Delaware | PA | Inactive |
| Tall Trees at Thornbury | 8 Strickland Way | Glen Mills | Delaware | PA | Inactive |
| Woodlands at Ridley Creek | 5 Diemer Drive | Media | Delaware | PA | Active |
| Leigh Crossing | 1653 Red Oak Lane | Macungie | Lehigh | PA | Active |
| Country Club of Poconos | 1711 Big Ridge Drive | East Stroudsburg | Monroe | PA | Active |
| Estates at Great Bear | 61 Morningside Terrace | East Stroudsburg | Monroe | PA | Inactive |
| Reserve at Pond Creek | 701 Big Ridge | East Stroudsburg | Monroe | PA | Active |
| Huntingdon Place | 200 Carson Terrace | Huntingdon Valley | Montgomery | PA | Inactive |
| Providence Chase | 2 Westminster Court | Collegeville | Montgomery | PA | Inactive |
| Regency at Providence | 198 Sloan Road | Phoenixville | Montgomery | PA | Inactive |
| Regency Hills at Providence | 700 Hillview Drive | Collegeville | Montgomery | PA | Active |

20120504

| Site Marketing Name | Street Address (within Site) | City | County | State | Status |
|---|---|---|---|---|---|
| River Crest | 285 Rivercrest Drive | Phoenixville | Montgomery | PA | Inactive |
| Bethlehem Estate | 4390 Anthony Court | Bethlehem | Northampton | PA | Inactive |
| Bushkill Manor | 333 Clearview Avenue | Hellertown | Northampton | PA | Inactive |
| Foxwood Farms | 4555 Homestead Drive | Nazareth | Northampton | PA | Inactive |
| Jacobsburg Manor Estates by Toll Brothers | 208 Donato Court | Hellertown | Northampton | PA | Inactive |
| Saucon Valley Meadows | 1860 Clarence Drive | Hellertown | Northampton | PA | Inactive |
| Toll Brothers at Saddle Creek | 115 Alexandra Circle | Mount Bethel | Northampton | PA | Active |
| Woodside Estates | 25 Hidden Meadow Drive | Easton | Northampton | PA | Inactive |
| Naval Square | 501 Captains Way | Philadelphia | Philadelphia | PA | Active |
| Milford Highlands | 168 Skyline Drive | Milford | Pike | PA | Inactive |
| East Greenwich, Woods | 5 Lenihan Lane | East Greenwich | Kent | RI | Inactive |
| River Farm | 1 Sandpiper Drive | West Warwick | Kent | RI | Inactive |
| Eastside Commons | 1 Wayland Ave North | Providence | Providence | RI | Inactive |
| Lincoln Reserve | 419 Albion Road | Lincoln | Providence | RI | Inactive |
| Hampton Hall | 16 Strand Hill Avenue | Bluffton | Beaufort | SC | Active |
| Hampton Point | Hampton Point Blvd and New River Pkwy | Hardeeville | Jasper | SC | Active |
| Aviara | 3010 Goldhurst | San Antonio | Bexar | TX | Active |
| Edgewater | 2 Lake Bridge Drive | San Antonio | Bexar | TX | Inactive |
| Reserve at The Dominion | 7327 Hovingham | San Antonio | Bexar | TX | Active |
| Ridge at Sonoma Verde | 18810 Cayman Landing | San Antonio | Bexar | TX | Inactive |
| Bridgewater Crossing | 3420 Bridgewater Dr | Richardson | Collin | TX | Active |
| Country Club Ridge | 11866 Casa Grande Trail | Frisco | Collin | TX | Inactive |
| Lakes of LaCima | 841 Amistad Dr. | Prosper | Collin | TX | Inactive |
| Preston Lakes | 3101 Broken Bow Way | Plano | Collin | TX | Inactive |
| Saddleridge Estates | 1078 Great Meadow Drive | Allen | Collin | TX | Active |
| Twin Creeks | 1710 Woodsboro Court | Allen | Collin | TX | Inactive |
| Chateaus of Coppell | 707 Chateaus Dr | Coppell | Dallas | TX | Inactive |
| Flower Mound Woods | 3701 Alberta Lane | Flower Mound | Denton | TX | Active |
| Hickory Sprngs at Flower Mound | 5312 Townsend Dr | Grapevine | Denton | TX | Inactive |
| King's Lake | 7004 Luxborough Drive | Plano | Denton | TX | Active |
| Sanctuary at Flowermound | 3416 Pheasant Court | Flower Mound | Denton | TX | Inactive |
| Villas at Coppel | 2968 Tuscany Way | Lewisville | Denton | TX | Inactive |
| West Ranch | 204 Anderson Ranch Ln | Friendswood | Galveston | TX | Active |
| The Woodlands | 6 South Sage Sparrow Circle | Houston | Harris | TX | Active |
| Timarron At Creekside Park | 7 Moonlit Ridge Ct | Houston | Montgomery | TX | Active |
| Bluffs at Heritage | 4821 Mcbreyer Place | Fort Worth | Tarrant | TX | Active |
| Estes Park | 401 Canyon Park Court | Southlake | Tarrant | TX | Active |
| Johnson Place | 2304 Top Rail Ln | Southlake | Tarrant | TX | Active |
| Linkside at Grapevine | 2655 Eagle Drive | Grapevine | Tarrant | TX | Inactive |
| Reserve At Colleyville | 6909 Brahms | Colleyville | Tarrant | TX | Inactive |
| Winfield Estates | 1029 Winfield Court | Southlake | Tarrant | TX | Active |
| Bella Lago | 2401 Padina Drive | Austin | Travis | TX | Inactive |
| Eagles Glen-SteinerRanch | 1816 Eagles Glen Cove | Austin | Travis | TX | Inactive |
| Lakehurst Vistas | 2604 Lakehurst Rd. | Spicewood | Travis | TX | Inactive |
| Ridge at Alta Vista | 202 Aria Drive | Austin | Travis | TX | Inactive |
| Vistas at Lakeway | 104 Glen Heather Court | Austin | Travis | TX | Inactive |
| Woodland Hills at Steiner Ranch | 11208 Woodland Hills Tr | Austin | Travis | TX | Inactive |
| Forest Creek | 2128 Hilton Head Drive | Lakeway | Williamson | TX | Inactive |
| Fox Creek | 16324 Fox Creek Forest Drive | Moseley | Chesterfield | VA | Active |
| Brookside Estates | Riley Road and Oakmont Drive | Warrenton | Fauquier | VA | Inactive |
| Harvest Ridge | 2300 Stoneridge Road | Winchester | Frederick | VA | Inactive |
| Twin Lakes Overlook | 101 Norfolk Court | Winchester | Frederick | VA | Active |
| Belmont Chase | 19966 Belmont Station Drive | Ashburn | Loudoun | VA | Inactive |
| Belmont Country Club | 43421 Ballantine Place | Ashburn | Loudoun | VA | Inactive |
| Estates at Evans Pond | 14159 Natalma Court | Lucketts | Loudoun | VA | Inactive |
| Estates at Shenstone | 17501 Tobermory Place | Leesburg | Loudoun | VA | Inactive |
| Hamilton Ridge | 17997 Taylor Road | Hamilton | Loudoun | VA | Inactive |
| Loudoun Valley Estates | 22689 Zulla Chase Place | Ashburn | Loudoun | VA | Active |
| Loudoun Valley Villages | 22793 Watson Heights Circle | Ashburn | Loudoun | VA | Active |
| Purceville Ridge | 909 Serenity Grove Terrace | Purcellville | Loudoun | VA | Inactive |
| South Riding | 25646 Creek Run Terrace | South Riding | Loudoun | VA | Active |
| Statford Club | 501 Sunset View Terr. | Leesburg | Loudoun | VA | Inactive |
| Waterford Ridge | 14786 Bankfield Drive | Waterford | Loudoun | VA | Inactive |
| Dominion Valley Country Club | 15503 Arnold Palmer Drive | Haymarket | Prince William | VA | Active |
| Chancellorsville Hunt | 7701 Kennett Court | Fredericksburg | Spotsylvania | VA | Active |
| Martinsburg Station | 128 Squaw Terrace | Martinsburg | Berkeley | WV | Active |

20120504